JACK N. ENTIS *vs.* RENT CONTROL BOARD OF BROOKLINE
& others.[1]

Norfolk. October 10, 1986. — February 5, 1987.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Rent Control*, Controlled rental unit, Judicial review. *Municipal Corporations*, Rent control, By-laws and ordinances. *Administrative Law*, Substantial evidence, Evidence. *Brookline*.

The rent control board of Brookline correctly concluded that certain provisions of the Brookline rent control by-law exempting from rent control units in owner-occupied two-family and three-family houses, but providing that this exemption does not apply to any "building" which contained four or more rental units prior to August 20, 1982, referred to the physical separateness of two adjacent buildings, each containing three rental units, rather than to the fact that, before the relevant date, the two buildings had been operated as a single economic entity under the ownership of the same party. [162]

There was substantial evidence before the rent control board of Brookline to support the board's finding that, at times relevant to the exemption provisions of the Brookline rent control by-law, two adjacent structures separated by a twelve-inch brick party wall constituted separate buildings, each having three residential units, rather than a single building with six residential units. [162-164]

In proceedings before the rent control board of Brookline, there was no prejudicial error in the board's consideration of the legislative history of a 1982 amendment to the Brookline rent control by-law. [164]

CIVIL ACTION commenced in the Brookline Division of the District Court Department on September 12, 1983.

The case was heard by *Lawrence D. Shubow*, J.

*A. Joseph Ross* for the plaintiff.

*Roger R. Lipson* for Rent Control Board of Brookline.

*William DeBear* for Walter Kwan & another.

---

[1] Walter Kwan and Sharon Wong.

LIACOS, J. Since 1956 the plaintiff has been a tenant in one of three residential apartments at 11 Babcock Street, Brookline. From 1939 until 1983, the apartments at 11 Babcock Street had been rental units owned in conjunction with three residential units in an attached row house at 9 Babcock Street. On May 16, 1983, the building at 11 Babcock Street was conveyed to the defendants, Walter Kwan and Sharon Wong (owners), who promptly occupied one of the apartments.

The owners applied to the Brookline rent control board (board) for a certificate of exemption from rent control on May 31, 1983. On August 9, 1983, the board granted a certificate of exemption pursuant to St. 1970, c. 843, as amended,[2] and § 3 (b) (5) of the rent and eviction control by-law, art. XXXVIII of the by-laws of the town of Brookline (by-law).

The by-law exempts from rent control rental units in owner-occupied, two-family and three-family houses. By force of a recent amendment, however, the by-law provides that this exemption does not apply to any "building" which contained four or more rental units prior to August 20, 1982.[3] The tenant contended that, because the board itself found the properties at 9 Babcock and 11 Babcock to have been operated prior to 1983 as a single economic entity under the ownership of the

---

[2] Statute 1970, c. 843, was amended, in respects not relevant here, by St. 1971, c. 673, and St. 1984, c. 56.

[3] In relevant part, § 3 of art. XXXVIII of the by-laws of the town of Brookline reads as follows:

> "*Definitions.* The following words or phrases as used in this by-law shall have the following meanings:
> " . . . .
> "(b) 'Controlled rental units', all rental units except:
> " . . . .
> "(5) the rental unit or units in an owner-occupied two-family or three-family house; provided that, this exception shall not apply to a building which was a four or more unit building and which became an owner-occupied two-family or three-family house after August 20, 1982."

That portion of § 3 (b) (5) beginning with "provided that" was added by amendment on November 9, 1982; it became effective on February 24, 1983. It is undisputed that the entire section is applicable to the case at bar.

same party, those properties together constitute a six-unit "building" which is proscribed from exemption by the amendment to the by-law.

The tenant filed a petition for judicial review in the District Court, Brookline Division. G. L. c. 30A, § 14 (1984 ed.). St. 1970, c. 843, § 4. The trial judge annulled the board's decision and remanded the case to the board for additional findings regarding its conclusion that the property was a three-family house at all pertinent times, and regarding the date "when it became owner-occupied as such." On remand, the board, without holding a further hearing, issued a new certificate of exemption on July 31, 1984, which was based on additional findings of fact and rulings of law.[4] After further hearing, the District Court judge issued a supplementary memorandum of decision annulling the board's second decision. Judgment was entered accordingly, and the case was appealed to the Appellate Division.

---

[4] The board filed a supplemental official record, which included a copy of the reports of selectmen and advisory committee to the special town meeting held November 9, 1982, discussing the purpose of the 1982 amendment to the by-law.

The board's additional rulings of law were as follows:

"1. For the purposes of applying the amendment to § 3(b) (5) of Article 38, the Board considers the term 'four or more unit building' to mean a single building which itself physically contains four or more units, and not a building which together with an attached building collectively contains four or more units.

"2. The clear intent of the amendment to § 3(b) (5) of Article 38 is to eliminate any incentive for owners of four or more unit buildings to combine units within their buildings, removing such units from the rental housing stock, for the sole purpose of obtaining an exemption for said buildings and is not to deny exemption to legitimate owner-occupants of three-family houses. (See legislative history set forth in Reports of Selectmen and Advisory Committee for November 9, 1982 Special Town Meeting, pg. 6-4, a copy of which is attached herewith to this decision.)

"3. The amendment to § 3(b) (5) of Article 38, effective February 24, 1983, which states that the owner-occupied two and three-family exemption '. . . shall not apply to a building which was a four or more unit building and which became an owner-occupied two-family or three-family house after August 20, 1982' does not prevent an owner-occupied three-unit building, formerly owned and operated

On report, the Appellate Division reversed the District Court judge's judgment and affirmed the board's decision. The Appellate Division held that the board's decision granting the exemption was not erroneous, as it was clearly supported by the evidence and was not based on any error of law. We affirm the order of the Appellate Division.

The Appellate Division held that "the primary question is the physical characteristics of the structure[,] not the economic relationship of the parties." The tenant argues here that (a) the owners' property is subject to rent control pursuant to art. XXXVIII, taken in toto; (b) the board was not warranted in finding as a fact that 9 Babcock and 11 Babcock were at all times two separate, three-family houses; and (c) the board was not entitled to consider the legislative history of the 1982 amendment to the by-law, as that history was set forth in the supplemental official record. See note 4, *supra* (ruling no. 2).

1. *The board's finding of fact.* The board's finding, that the property was at all times a separate, three-family house, exempt from rent control, is subject to judicial review only to the extent provided by the State Administrative Procedure Act, G. L. c. 30A (1984 ed.). The tenant asks us to set aside the board's finding on the statutory ground that it is "[u]nsupported by substantial evidence." See G. L. c. 30A, § 14 (7) (e).

"Substantial evidence" is "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). "While we must consider the entire record, and must take into account whatever in the record detracts from the weight of the agency's opinion, *Cohen* v. *Board of Registration in Pharmacy*, 350 Mass. 246, 253 (1966), as long as there is substantial evidence to support the determination of the agency, we will not substitute our view of the facts." *Moulton* v. *Brookline Rent Control Bd.*, 385 Mass. 228, 233 (1982).

Here, the challenged decision of the board is its finding that the owners' property, concededly "three-family" and "owner

jointly with an attached three-unit building, from being exempt by operation of § 3(b) (5) if said three-unit building subsequently becomes owned and operated as a separate economic entity."

occupied," is a separate "house" or "building" within the meaning of art. XXXVIII, § 3 (b) (5), and not part of what was, prior to the statutory cutoff date, a single "four or more unit building" comprised of 9 Babcock and 11 Babcock. Thus, what must be supported by substantial evidence is the board's finding that 9 Babcock and 11 Babcock were, and are, *separate* buildings.

The tenant argues that the kind of separateness found by the board was the wrong kind — a separateness understood solely in terms of physical or architectural form.[5] In this context, the tenant follows the view of the trial judge and argues that the controlling test of separateness should be one which focuses on "economic reality" and not solely on tangible form.

As authority for this proposition, the judge relied on *Trovato* v. *Walsh*, 363 Mass. 533 (1973). In *Trovato* we were asked to decide the meaning of the word "owner" in the term "owner-occupied"; and, more particularly, to decide whether "owner," as used in a statute, referred to a holder of record title or to a beneficial owner. Faced with the difficulty that an analytical focus on legalistic forms could have rendered the term "owner" entirely meaningless within in the context of rent control, the court in *Trovato* correctly viewed as significant the issue who actually controlled the property. By contrast, however, the statutory term at issue here — the word "building" — involves the physical reality to which the wording of the statute is literally addressed. Thus, we cannot say that a primary focus by the board on physical indicia of separateness was inappropriate.

That said, the board's finding of physical separateness in this case is supported by substantial evidence.[6] The owners

---

[5] That the board's decision was based primarily on a finding of physical separateness is shown by its ruling that the by-law barred exemption only to "a single building which itself *physically* contains four or more units" (emphasis added). See note 4, *supra* (ruling no. 1). That the board did not focus on economic realities, as the trial judge thought it should, may be inferred from the fact that it did not reach a contrary result due to its own finding that 9 Babcock and 11 Babcock had been "operated as a single economic entity by one owner" prior to the conveyance of 11 Babcock in 1983. See note 6, *infra* (finding no. 12).

[6] The board found the following facts relevant to this issue:

"1. 11 Babcock Street is a three-family house.

presented testimony that 11 Babcock is separated from 9 Babcock by a twelve-inch brick party wall, and that it has a separate entrance and a separate heating system. They also introduced in evidence a letter written to the board by an attorney who conducted a title search on their behalf. The attorney concluded that 9 Babcock and 11 Babcock are separate properties. He stated that, although the properties had been assessed previously as a single parcel, this "obviously has been done as a matter of convenience by the town since the properties have been in a combined ownership for several years." He noted that throughout the time period of his examination (which dated back at least as far as 1936, but not to the time when the

"2.  11 Babcock Street is separated from 9 Babcock Street, another three family house, by a 12-inch party wall, is a separately assessed parcel of land on a separate block/lot, has separate heating and electric systems, and a separate entryway.
      "    . . . .
"6.  9 and 11 Babcock Street were, immediately prior to the sale of 11 Babcock Street to the applicants, owned jointly by Robert Rook and Richard Rubino, assessed by the Town as one parcel, and under one heating system.
"7.  9 and 11 Babcock Street were owned and conveyed jointly by a succession of parties back to March 11, 1939 when one Martin L. Bragg purchased both properties by separate deed.
"8.  Each of the above mentioned deeds referred to the common wall of 9 Babcock Street and 11 Babcock Street as a '12-inch wall'.
"9.  Prior to 1936, the owners of 11 Babcock Street and 9 Babcock Street were different individuals who were not related in any way.
      "    . . . .
"11. 11 Babcock Street is, and was, a three-family house regardless of the fact that said property was owned jointly with 9 Babcock Street by a succession of individuals immediately preceeding [*sic*] the conveyance of said property to applicants.
"12. Previous to the conveyance of 11 Babcock Street to Walter Kwan and Sharon Wong on May 26, 1983, 9 and 11 Babcock Street were considered by the Board to be two separate three-family buildings which were attached and operated as a single economic entity by one owner, and which, for administrative purposes, were registered with the Brookline Rent Control Board as one property.
"13. 9 and 11 Babcock Street are not considered by the Board to be a single building physically containing four or more units.
      "    . . . .
"15. Since May 26, 1983, 11 Babcock Street has been owned, operated and managed separate from the adjoining property at 9 Babcock Street."

buildings were built), the "properties consistently are referred to as separate lots and[,] at such times as buidings are referred to[,] as separate buildings." The attorney stated that the reference to a party wall in prior deeds for each property indicates "that the two properties were originally built as separate properties." The owners also introduced in evidence a title abstract and building department plans indicating that the properties were situated on separate lots.

Viewing the record as a whole, we cannot say that the board's decision lacked substantial evidentiary support.[7]

2. *Reliance on legislative history.* The tenant maintains that the board was not entitled to consider the legislative history of the 1982 amendment to the by-law.[8] The tenant is entitled to relief only on a showing that his "substantial rights . . . have been prejudiced" by the board's action. G. L. c. 30A, § 14 (7). The tenant concedes that the meaning of the amendment to the by-law was clear and unambiguous. In these circumstances, any resort to legislative history is superfluous. *McCarthy* v. *Commissioner of Revenue*, 391 Mass. 630, 633 (1984). *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977). Thus, any irregularities which may have attended the board's handling of that history were not prejudicial, as the result is the same based on the clear language of the by-law.

*Order of the Appellate Division affirmed.*

[7] The board stated in its findings of fact that, prior to the conveyance of 11 Babcock to the owners, "9 and 11 Babcock Street were considered by the Board to be two separate three-family buildings . . . which, for administrative purposes, were registered with the [board] as one property." Admittedly, this statement is unsupported by evidence in the record. We assume the board to be familiar with its own prior determinations, and we defer to its judgment on such a matter. Additionally, we hold that, even without reliance on this statement, the board's finding of separateness is supported by substantial evidence.

[8] The tenant argues that the board's consideration of legislative history was improper because the history was not "offered and made a part of the record in the proceeding," as would be required if the board were to take the history into consideration as evidence. See G. L. c. 30A, § 11 (4). He also argues that consideration was improper because (a) if the history was administratively noticed by the board, he was not given timely notice of its intention to do so, as required by G. L. c. 30A, § 11 (5); and (b) the source of the history relied on by the board was unclear and inappropriate.