Dolan, P J.
The plaintiff Haim Zahavi (“Zahavi") applied to the Rent Control Board of Brookline (“Board") for an exemption from rent control on the basis that his property at 526 Harvard Street, Brookline, was an owner-occupied three-family house and was therefore exempt from rent control according to Article XXXVIII, section 3 (b) (5) of the By-Laws of the Town of Brookline [“section 3 (b) (5) ”]. Cambridgeport Savings Bank was allowed to intervene. The Board denied that application, finding 526 Harvard Street to be part of a six-unit building; and plaintiffs sought judicial review. The court upheld the Board’s decision, citing “substantial evidentiary support" for denying the exemption. This division affirms the court’s ruling.
The plaintiffs’ argument has five central claims: 1) there is a lack of substantial evidence to supporttheBoard’s decision; 2) theoriginal “purpose” of the construction of 524 and 526 Harvard Street was to create two separate buildings, and the Board is bound to honor that purpose; 3) the restriction on exemption from rent control contained in section 3(b) (5) ofthe Brookline By-Laws does not apply to the structure at 526 Harvard Street; 4) the plaintiff Zahavi bought the property at 526Harvard Street relying, in good faith, on public records which treat 524 and 526 Harvard Street as separate properties; and 5) the Board’s failure to exempt 526 Harvard Street runs against the stated purpose of the rent control by-law (i.e. art. XXXVIII).
1. Section 3 (b) (5) exempts from rent control “the rental unit or units in an owner-occupied two-family or three-family house; provided that, this exception shall not apply to abuilding which was afour or more unit building and which became an owner-occupied two-family or three-family house after August 20, 1982.” Zahavi sought to have his property at 526 Harvard Street classified as an owner-occupied threefamily house, thereby qualifying for an exemption from rent control. The Board held two hearings, after which the Board declared the property at 526 Harvard Street to be a *187 section of a six-unit building, the remainder of which is numbered 524 Harvard Street. Accordingly, the Board denied the application for rent control exemption.
As the plaintiffs correctly point out, the relevant standard for determining whether the Board acted properly is whether there is “substantial evidence” to support the Board’s decision. Moulton v. Brookline Rent Control Board, 385 Mass. 228, 233 (1982). “Substantial evidence” is defined in G.L.c. 30A, §1(6) as “such evidence as a reasonable mind might accept as adequate to support a conclusion.” The Board made the following findings of fact, among others, in support of its ruling that the properties at 524 and 526 Harvard Street are part of a single building rather than two separate buildings: a) the properties at524 and 526 Harvard Street share a common front door; b) the two properties share a common internal stairway; c) there is an open passageway, without a door, linking the basements of the two properties; d) 524 and 526 Harvard Street give the outward appearance of one building; e) 524 and 526 Harvard Street “were constructed simultaneously to form one building”; f) the two furnaces and two water heaters which service the two properties are all located at 526 Harvard Street; g) a single chimney, located at 526 Harvard Street, handles all of the oil and gas heat exhaust from both properties; and h) all electric meters and fuse boxes for the two properties are located at 526 Harvard Street.
In Entis v. Rent Control Board of Brookline, 399 Mass. 158, 162-163 (1987), the court accepted as substantial evidence for the physical separateness of two buildings the facts of separation by a twelve-inch brick party wall, separate entrances, and separate heating systems. By contrast, 524 and 526 Harvard Street lack two of these three elements: there is a common entrance, and the heating systems share a common exhaust system. Even the one similarity, the brick party wall, has a difference. According to BLACK’S LAW DICTIONARY, 5TH EDITION (1979), a “party wall” is defined as “A wall erected on a property boundary as a common support to structures on both sides, which are under different ownership.” In Entis, deeds which date back to the 1930’s for two properties separated by a brick wall make specific reference to a party wall. Originally, the properties were in separate ownerships. In the instant case, the Board issued as findings of fact: a) that the brick wall separating 524 and 526 Harvard Street is both a party wall and a fire wall; and b) that the first party wall agreement for that wall was recorded in 1986. Since 524 and 526 Harvard Street were under the same ownership at all times from 1902 until 1986, it is not unreasonable to infer that the brick wall was not built as a “party wall.” Instead, its original function was to act as a fire wall. In addition, this division accepts the Board’s findings of fact as presented in the Board’s report, since it is not the role of the court to challenge the fact-finding prerogative of an administrative agency. Gnerre v. Massachusetts Commission Against Discrimination, 402 Mass. 502, 509 (1988); Smith College v. Massachusetts Commission Against Discrimination, 376 Mass. 221, 224 (1978).
While the Board did receive some evidence which tends to support the plaintiffs’ claim of the separateness of 524 and 526 Harvard Street, “the court should be slow to decide that a public board has acted unreasonably or arbitrarily. The court should cast aboutto discover, if possible, some ground which reasonable men mightdeem proper on which the action can rest.” Cotter v. Chelsea, 329 Mass. 314, 318 (1952); Moulton v. Brookline Rent Control Board, 385 Mass. 228, 233 (1982). It is the opinion of this division that there was substantial evidence before the board which warranted the decision to classify 524 and 526 Harvard Street as a single building.
2. The plaintiffs argue from Martin v. Rent Control Board of Cambridge, 19 Mass. App. Ct. 745, 748 (1985), thatthecourtmustconsidertheoriginal purpose of abuilding in determining how it should be viewed by the Board: “the purpose for which a structure is built... is the determinative fact in deciding the structure’s classification under a zoning by-law.” The plaintiffs assert that by this line of reasoning, the Board should have accepted the facts that 524 and 526 Harvard Street are situated on separately assessed lots and were built with a twelve-inch wall between them as *188 sufficient proof that the original purpose was for 524 and 526 Harvard Street to exist as separate buildings. The first problem here is that art. XXXVIII is a rent-control bylaw and not a zoning by-law. Even if one allows that the extension of the principle of abuilding’s original purpose suggested in Van Arsdale v. Provincetown, 344 Mass. 146, 147-148 (1962), applies to rent control as well as zoning, there is still the issue of determining the original purpose of524 and 526 Harvard Street. The claim of intended separateness based on the wall and the separate lots is severely weakened by the Board’s finding of fact number thirty-seven, which states in part, “524 and 526 are sections of asix unit building. ...This building was owned and operated as onebuilding from the time it was constructed until 1986.” Since 524 and 526 Harvard Street were treated by their owners as a single building for the first eighty-four (or so) years following construction, it is difficult for this division to see how the “original purpose” could have been for the two sections to be considered as separate buildings.
3. The plaintiffs claim that the exclusion from rent control exemption found in section 3(b) (5) does not apply to 524 and 526 Harvard Street because of the Board’s rulings of law in Entis v. Rent Control Board of Brookline, 399 Mass. 158, 160-161 (1987). As cited earlier, section 3(b) (5) states that an exclusion from rent control applies to “the rental unit or units in an owner-occupied two-family or three-family house; provided that, this exception shall not apply to a building which was afour or more unit building and which became an owner-occupied two-family or three-family house after August 20, 1982.” The Board issued afinding of fact which declared that 524 and 526 Harvard Streetwere managed and operated as one apartment building, known as 526 Harvard Street, from 1976 to 1986. The Board reasons that, because 524 and 526 Harvard Street were a single apartment building after the 1982 cutoff date, those properties are excluded from the rent control exemption.
In Entis, the Board’s third ruling of law states that the exclusion from exemption “does not prevent an owner-occupied three-unit building, formerly owned and operated jointly with an attached three-unit building, from being exempt by operation of section 3 (b) (5) if said three-unit building subsequently becomes owned and operated as a separate economic entity” (160-161). The plaintiffs claim that 524 and 526 Harvard Street satisfy this provision and therefore qualify for exemption. The language of this ruling of law does not, however, seem to apply to the properties in the instant case. For 524 or526 Harvard Street to be governed by this ruling, the two properties would have to have been separate buildings in the eyes of the Board, linked only by the economic concerns inherent in operating an apartment building. The Board did not, however, consider 524 and 526 Harvard Street to be two separate three-unit buildings. There was significant structural as well as operational linkage of the properties.
In addition, the plaintiffs contend that the Board incorrectly interpreted section 3 (b) (5) and that the exclusion from rent control exemption “applies only to a situation where the total number of rental units in a building is diminished through some overt act on the owner’s part.” The Board rejects this reading of section 3 (b) (5) as unduly restrictive. It has been established in Fioravanti v. State Racing Commission, 6 Mass. App. Ct. 299, 302 (1978), that “An agency’s interpretation of its own regulation is entitled to great weight.” The Board’s interpretation seems reasonable and consistent with the overall purpose of the by-law.
4. The plaintiffs claim that they purchased the properties at 524 and 526 Harvard Street relying, in good faith, on public records which indicated that the properties were separate. The two lots are treated as distinct in the records of the town Building Department, the Planning Board, and the Board of Assessors; and 524 and 526 Harvard Street have been assessed separately. While these agencies may view 524 and 526 Harvard Street to be separate properties for the purposes of assessing, these decisions do not compel the Board to treat them as separate buildings forthe purpose of rent control. There is also no evidence to suggest that the Board ever ruled 524 and 526 Harvard Street to be separate buildings, and it would be that type of public record *189 on which the plaintiffs could properly claim good faith reliance for the purposes of rent control.
5. The plaintiffs argue that the exclusion of526Harvard Streetfrom exemption from rent control violates the stated purpose of the by-law. While this division acknowledges that one important provision of the rent control by-law is that owner-occupied three-family houses shall be exempt from rent control, provided that these houses attained three-family status prior to August 20,1982, the plaintiffs have failed to prove that 526 Harvard Street is a three-family house and was a three-family house prior to the exemption’s cutoff date. It is apparent that the primary purpose of the by-law is to help families of low and moderate income to find affordable housing. It is the plaintiffs’ attempt to remove 526 Harvard Street from rent control, by arguing for the separateness of structurally and historically linked properties, which runs counter to the intent of the by-law.
The judgment of the court is affirmed. Report dismissed.