L. DEAN SANDERS v. THE TROPICANA, A CORPORATION

No. 7626DC411

(Filed 3 November 1976)

1. Associations § 2; Corporations § 18— cooperative association — board of directors — refusal to approve stock transfer

The action of the board of directors of a cooperative apartment association in withholding consent to a transfer of stock in the cooperative should be based on reasons necessary to carry out the cooperative purposes, and consent arbitrarily withheld is invalid.

2. Associations § 1; Corporations § 1— cooperative association — treatment as corporation

A cooperative association organized in corporate form is basically a corporation and is generally treated as such.

Sanders v. The Tropicana

3. **Associations § 2; Corporations § 18— restraints on transfer of stock — cooperative apartments**

Restraints on alienation of corporate stock in the form of consent requirements are generally disfavored but are viewed differently when the hybrid relationship in a cooperative apartment is involved.

4. **Associations § 2; Corporations § 18; Landlord and' Tenant § 11— cooperative apartment association — restraint on stock and lease transfer**

Since a proprietary lease as well as stock is involved in the relationship between a tenant-stockholder and an owner-cooperative, the restraint on the transfer of the stock and lease is governed by the general rule that reasonable restraints on the assignment of leases are valid.

5. **Associations § 2; Corporations § 18— cooperative associations — restrictions on stock transfer — effect of statute**

The statute requiring a cooperative association to reserve the right of purchasing the stock of any member whose stock is for sale and authorizing the restriction of a transfer of stock to persons made eligible to membership in the bylaws, G.S. 54-120, does not authorize restraints only in the form of a right of first refusal.

6. **Associations § 2; Corporations § 18— cooperative associations — restraint on stock and lease transfer**

A restraint on the transfer of the stock and lease in a cooperative association is valid when provided for by statute and reasonably necessary for the cooperative purposes.

7. **Associations § 2; Corporations § 1— cooperative association — general corporation law**

The statute providing that a cooperative association organized in corporate form shall be "maintained in accordance with the general corporation law" does not convert a cooperative association into a general corporation, does not destroy the identity of the cooperative, and does not destroy the relationship between the tenant-shareholder and the owner-cooperative, which is based primarily on the long-term corporate stock. G.S. 54-117.

8. **Associations § 2; Corporations § 18— cooperative associations — transfer restrictions — general corporation law**

There is no applicable general corporation law which supplants the authority of the board of directors of a cooperative association in the enforcement of transfer restrictions contained in the proprietary lease and authorized by G.S. 54-120.

9. **Associations § 2; Corporations § 18— cooperative apartment association — refusal of directors to approve stock and lease transfer — action not arbitrary**

The board of directors of a cooperative apartment association did not act arbitrarily and capriciously in refusing to approve the sale of a stock subscription and lease to a purchaser who intended to sublet rather than occupy the purchased apartment, notwithstanding

the board of directors had no written guidelines detailing when ap-
proval of a stock and lease transfer would be refused and the board
had previously approved the subletting of two other apartments to
non-owners.

APPEAL by defendant from Order of *Johnson, Judge.* Order
entered 2 January 1976 in District Court of MECKLENBURG
County. Heard in the Court of Appeals 23 September 1976.

By assignment on 1 June 1969 the plaintiff became a sub-
scriber for Stock Certificate No. 228-B in the defendant co-
operative corporation, the owner of a 22-unit apartment com-
plex in Charlotte known as The Tropicana. Plaintiff assumed
the payment of the balance due on a promissory note to defend-
ant in the principal sum of $19,000.00, payable at the rate of
$136.13 per month for 240 consecutive months beginning 1
February 1966, which note was secured by pledge of his stock
certificate.

He also acquired the rights and assumed the obligation of
his assignor in a Shareholders' Lease, which entitled him to
occupy apartment No. 228. Under the Shareholders' Lease the
lessee contracted to pay rent in such aggregate sum as the Board
of Directors, in its judgment, should assess. Further, the
Board was given the power to determine the manner of main-
taining and operating the apartment building and to establish
such house rules as it determined reasonable. The lessee could
not sublet the apartment without the consent of the Board, and
could not assign the lease without the "written consent to said
assignment executed and signed by a majority of the Board of
Directors."

Plaintiff later married, had a child, and because of the
need for space, purchased a home, vacated apartment 228 late
in 1972, and offered the stock subscription and lease for sale.
On 12 March 1973, plaintiff received a written offer to pur-
chase from one Edward Pientka.

When he submitted the assignment to the Board of Direc-
tors for their consent, plaintiff indicated that Pientka would
"sublease the apartment prior to the time when he anticipated
that he would occupy the apartment."

The Board of Directors refused to consent to the assignment
of the stock subscription and lease because Pientka intended
to sublet rather than occupy the apartment. Plaintiff terminated

Sanders v. The Tropicana

monthly payments to defendant after March 1973. Plaintiff finally found another purchaser in July 1974, and the Board of Directors consented to this assignment.

Plaintiff began this action in October 1973 and sought a temporary restraining order and damages after defendant's Board of Directors attempted to terminate plaintiff's rights under his lease agreement. The trial court entered the restraining order which, after a hearing, was continued pending trial.

Defendant in its answer and counterclaim sought to recover delinquent payments for the period from April 1973 until July 1974 in the sum of $2,772.17, and legal expenses, late payment penalty and interest charges in the sum of $614.86, amounting to the total sum of $3,387.03.

At trial without jury the plaintiff's evidence tended to show that plaintiff was Vice President and a member of the Board of Directors of The Tropicana during the calendar year 1972, and that he knew of at least two other sales to subscribers who proceeded to sublet their apartments immediately following the time of sale with approval by the Board of Directors.

Evidence for defendant tended to show that the Board of Directors disapproved plaintiff's sale to Pientka because at that time four apartments were being sublet and the Board wanted to put a halt to leasing; that prior to plaintiff's application the Board had disapproved three or four sales to purchasers who intended to lease their apartments; that two sales were disapproved after plaintiff's application; and that in accordance with this policy no rental tenants were living in the complex by the time of the trial. The minutes of the meetings of the Board of Directors as early as 1968 reflected that the stockholders preferred that apartment units not be rented. Evidence was offered to support defendants' counterclaim for damages in the sum of $3,387.03.

The District Court found facts substantially as set out above, concluded that the refusal by the defendant's Board of Directors to approve the sale by plaintiff to Pientka "was arbitrary and capricious and was a breach of the agreements . . . ", and that plaintiff recover of defendant the sum of $1,366.72, the difference between the proposed sale in March 1973 and the actual sale in July 1974, and that defendant recover nothing.

Defendant appealed.

*Francis O. Clarkson, Jr., for plaintiff appellee.*

*William H. Elam for defendant appellant.*

CLARK, Judge.

The issue presented by this appeal is whether the Board of Directors of defendant cooperative corporation had the authority to deny consent to the transfer by the plaintiff of his stock subscription and proprietary lease. Relevant to the determination of this issue are the history and purpose of the cooperative apartment and the relationship between the owner-cooperative and the tenant-shareholder.

The defendant corporation was the owner of a cooperative apartment. A cooperative apartment is a multi-unit dwelling in which, as a general rule, each resident has (1) an interest in the entity owning the building evidenced by his stock subscription or share, and (2) a proprietary lease entitling him to occupy a particular apartment within the building.

Cooperative apartments flourished following both world wars for both economic and social reasons. They provided a ready means for an equity investment since a mortgage could be obtained more readily by the cooperative and then each tenant-shareholder was assessed a pro rata share of the mortgage payments, taxes, and maintenance costs.

One disadvantage of the cooperative apartment, which may explain the more popular current use of the condominium form of apartment ownership, is that each tenant-shareholder is dependent upon the financial condition of the others. The failure of one to pay his proportionate share of the mortgage payment results in a default that must be cured by the other tenants if foreclosure on the whole property is to be avoided. Because of this characteristic many cooperative apartments failed during the great depression of the 1930's. Berger, Condominium: Shelter on a Statutory Foundation, 63 Columbia L. Rev. 987, 993 (1963) ; Note, Co-operative Apartment Housing, 61 Harv. L. Rev. 1407 (1948). The cooperative apartment may be rare in North Carolina for this is a case of first impression here. Rare also are cases dealing with the alienation of stock in corporations or other cooperative organizations. R. Robinson, N. C.

Corp. Law, § 7-10 (2d Ed. 1974). For precedent we must examine the decisions in other jurisdictions.

Apart from the already noted economic purpose of the cooperative apartment, there is the social purpose of choosing one's neighbors. A common provision in the proprietary lease of the tenant-shareholder is the restriction on transfer of the stock and the lease. This is essential because it is the only effective means by which tenants may control occupancy of the apartment, which is of primary interest to tenants who live in close proximity to each other and share common facilities. From the cases examined it appears that this restraint almost always takes the form of prohibiting transfer except with the consent of the board of directors. See Annot., 99 A.L.R. 2d 236 (1965).

[1] The action of the board of directors in withholding consent to a transfer of stock should be based on reasons necessary to carry out the cooperative purposes. *Penthouse Properties Inc. v. 1158 Fifth Ave.*, 256 App. Div. 685, 11 N.Y.S. 2d 417 (1939). Consent arbitrarily withheld is invalid. *Mowatt v. 1540 Lake Shore Drive*, 385 F. 2d 135 (7th Cir. 1967). "Each case must be examined in the light of all the circumstances to determine whether the objective sought to be accomplished by the restraint is worth attaining at the cost of interfering with the freedom of alienation. . . . " Restatement of Property § 406, Comment i, § 410, Comment g (1944).

[2-4] The defendant is a cooperative association organized in corporate form and under G.S. 54-117, "maintained in accordance with the general corporation law except as otherwise provided for in this Subchapter." It is basically a corporation and is generally treated as such. 18 Am. Jur. 2d Cooperative Associations § 1 (1965). But in fact a cooperative is somewhat of a "legal hybrid" in that the stockholder possesses both stock and a lease, and the relationship between the tenant-shareholder and the owner-cooperative is largely determined by reading together the certificate of incorporation, stock offering prospectus, the stock subscription agreement, and the proprietary lease. 15 Am. Jur. 2d Condominiums and Cooperative Apartments § 23 (1964). Restraints on alienation of corporate stock in the form of consent requirements are generally disfavored. Annot., 65 A.L.R. 1159 (1930); Supplemental Annot., 61 A.L.R 2d 1318 (1958); H. Henn, Handbook on the Law of Corporations 544 (2d Ed. 1970). They are viewed differently when the hybrid relationship in a cooperative apartment is involved. Since a

proprietary lease as well as stock is involved in the peculiar relationship between a tenant-stockholder and the owner-cooperative, the restraint is governed by the general rule that reasonable restraints on the assignment of leases are valid. *Penthouse Properties, Inc. v. 1158 Fifth Ave., supra.*

**[5]** Applying these principles in this case, we note that the shareholders' lease contained a restraint on the transfer of the stock subscription and the lease at the time plaintiff signed it. This restraint was authorized by G.S. 54-120, which states that

" . . . A mutual association shall reserve the right of purchasing the stock of any member whose stock is for sale, and may restrict the transfer of stock to such persons as are made eligible to membership in the bylaws."

Plaintiff contends that this statute authorizes restraints only in the form of a right of first refusal, but we think this interpretation is too narrow.

**[6]** In only one case have our courts been called upon to determine the validity of a restraint on the alienation of corporate stock. There, even in the absence of a related proprietary lease, the court upheld the consent requirement, placing particular importance on the fact that there was no statute in our general corporate law prohibiting such a restraint and that the restraint was included in the charter when the complaining party acquired his stock. *Wright v. Tel. Co.,* 182 N.C. 308, 108 S.E. 744 (1921). We hold that a restraint such as the one challenged here is valid when provided for by statute reasonably necessary for the cooperative purposes.

In *68 Beacon St., Inc. v. Sohier,* 289 Mass. 354, 194 N.E. 303 (1935), the court upheld the board of directors in withholding consent to the transfer of stock and lease because it determined the transferee to be without financial responsibility. In *Mowatt v. 1540 Lake Shore Drive Corp., supra,* the court held that the refusal of the board of directors to consent to a transfer because of insolvency, association with people of disreputable character, and noisiness of the prospective transferee, was based on reasonable criteria.

The liberality of the New York courts in upholding the denial of consent by the board of directors of the cooperative is illustrated by the case of *Weisner v. 791 Park Avenue Corp.,* 6 N.Y. 2d 426, 160 N.E. 2d 720, 190 N.Y.S. 2d 70 (1959), *rev'g,*

Sanders v. The Tropicana

7 A.D. 2d 75, 180 N.Y.S. 2d 734 (1958), where the complaint alleged that the treasurer and member of the cooperative board of directors had personal animus against a relative of the proposed transferee, improperly used his influence on the other members of the board, and negotiated another transfer wherein he would receive a brokerage fee. The court held that the complaint did not state a cause of action, and stated in substance that, absent a violation of statutory standards prohibiting discrimination because of race, color, religion, national origin or ancestry, under the cooperative plan of organization in effect, "there is no reason why the owners of the co-operative apartment house could not decide for themselves with whom they wished to share their elevators, their common halls and facilities, their stockholders' meetings, their management problems and responsibilities, and their homes." 190 N.Y.S. 2d at 75.

[7, 8]   In North Carolina a cooperative association may be organized in corporate form. If so organized, under G.S. 54-117 the association shall be "maintained in accordance with the general corporation law." However, this statute does not convert a cooperative association into a general corporation, does not destroy the identity of the cooperative, and does not destroy the relationship between the tenant-shareholder and the owner-cooperative, which is based primarily on the long-term proprietary lease rather than the corporate stock. We find no applicable general corporation law which would supplant the authority of the defendant's board of directors in the enforcement of the transfer restrictions contained in the proprietary lease and authorized by G.S. 54-120.

[9]   In this case the conclusion of trial court that the refusal to consent to the transfer by the board of directors was arbitrary and capricious was based on findings of fact, largely uncontradicted, as set out in the initial statement of the case, and on the last "finding of fact," as follows:

"10. That there appeared to be no guidelines within which the board of directors of the defendant corporation may operate when they exercise their discretion as to whether or not to permit the transfer of its stock (and/or subscription to stock) and subsequent lease of one of its apartment units and that up until March of 1973 the Board of Directors had not formally declined to approve the transfer of any of its stock and/or subscriptions to stock for the reason that the purchaser was not going to occupy the

apartment complex but was in fact going to sub-rent same and had in fact approved at least two of these transactions."

In our opinion the findings of fact do not support the conclusion that the action of the board of directors in denying consent to the proposed transfer of his stock and proprietary lease by the plaintiff to Pientka in March 1973, was arbitrary and capricious. The cooperative has a social purpose as well as an economic one. The plaintiff purchased his interest in the defendant cooperative with knowledge of the restraint on transfer included in his proprietary lease. The board of directors adopted a policy of limiting apartment occupancy to owners. This decision was reasonably necessary to carry out the cooperative purpose. The board's approval of subletting to at least two non-owners does not render the decision arbitrary and capricious. It would be unreasonable to expect the Board of Directors to have written guidelines detailing every instance in which it will refuse its consent. To so hold would unreasonably restrict the board of directors in the exercise of their authority in the government of the cooperative apartment for the mutual benefit of its tenant-shareholders.

The judgment is

Reversed and this cause Remanded for proceedings on defendant's counterclaim consistent with this opinion.

Judges BRITT and PARKER concur.