BESSIE SLAVIN[1] *vs*. RENT CONTROL BOARD OF BROOKLINE
& another.[2]

Norfolk. November 6, 1989. - January 16, 1990.

Present: LIACOS, C.J., WILKINS, O'CONNOR, & GREANEY, JJ.

*Landlord and Tenant*, Assignment of lease, Subletting, Eviction. *Adminis-trative Law*, Agency's authority. *Practice, Civil*, Appellate Division: de-cision; Attorney's fees; Costs.

A tenant's obligation, as specified in a residential lease, to obtain the con-sent in writing of the landlord before assigning the lease or subletting or permitting other occupants did not imply as a matter of law an obli-gation on the landlord's part to act reasonably in withholding consent. [461-464]

In a proceeding before the rent control board of Brookline by a landlord seeking to recover possession of a controlled rental unit, the board had authority, at least with respect to interpretation of lease provisions and determining the obligations that flow therefrom, to deal with questions of law subject to de novo judicial review. [464-465]

On an appeal to the District Court Appellate Division by the rent control board of Brookline in a proceeding by a landlord to recover possession of a controlled unit, neither G. L. c. 231, § 108, nor Dist. Mun. Cts. R. Civ. P. 64 (i) (1989), nor any "broad equity powers" reflected in G. L. c. 185C, § 3, gave the Appellate Division authority to order the board to pay attorneys' fees to the landlord; furthermore, where the board's appeal could not be characterized as either frivolous or intended for delay, the Appellate Division lacked authority to award the landlord double costs. [465]

CIVIL ACTION commenced in the Brookline Division of the District Court Department on February 13, 1987.

The case was heard by *Lawrence D. Shubow*, J.

[1] Doing business as Summit Realty Trust.

[2] Barry Myers.

The Supreme Judicial Court granted a request for direct appellate review.

*David Wm. Adams* for Rent Control Board of Brookline.

*Herbert S. Lerman* for the plaintiff.

O'CONNOR, J. Article XXXVIII of the Brookline rent control by-law provides in relevant part as follows: "Section 9. Evictions. (a) No person shall bring any action to recover possession of a controlled rental unit unless: . . . (2) the tenant has violated an obligation or covenant of his tenancy other than the obligation to surrender possession upon proper notice and has failed to cure such violation after having received written notice thereof from the landlord; . . . (b) A landlord seeking to recover possession of a controlled rental unit shall apply to the board for a certificate of eviction. . . . If the board finds that the facts attested to in the landlord's petition are valid and in compliance with paragraph (a), the certificate of eviction shall be issued. . . . (c) A landlord who seeks to recover possession of a controlled rental unit without obtaining such certificate of eviction shall be deemed to have violated this By-law, and the Board may initiate a criminal prosecution for such violation."

The plaintiff landlord applied to the defendant rent control board of Brookline (board) for a certificate of eviction seeking to evict the defendant tenant Barry Myers on the ground that Myers had violated an obligation of his tenancy. The lease states: "Occupancy of Premises — Tenant shall not assign nor underlet any part or the whole of the premises, nor shall permit the premises to be occupied for a period longer than a temporary visit by anyone except the individuals specifically named in the first paragraph of this tenancy, their spouses, and any children born to them hereafter, without first obtaining on each occasion the assent in writing of Landlord."

After a hearing, the board found that the tenant had allowed an unauthorized person to occupy his apartment without first obtaining the landlord's written consent. Nonetheless, the board refused to issue the eviction certificate. The board based its refusal on its determination of law that, im-

plicit in the lease provision requiring the landlord's consent prior to an assignment or a sublease or the permitting of other occupants, there is an "agreement on the part of the landlord to at least consider prospective tenants [and other permitted occupants] and not withhold consent unreasonably or unequivocally." The board found that the landlord had acted unreasonably because she had categorically refused to allow the tenant to bring in someone new after the original cotenant had moved out. Because of the landlord's unreasonable behavior, the board concluded that the tenant could not be said to have violated the lease.

The landlord obtained judicial review under G. L. c. 30A, § 14, and a judge in the Brookline Division of the District Court annulled the board's decision and ruled that the certificate of eviction should be issued. The judge concluded, contrary to the board's decision, that Massachusetts law permits a landlord to withhold consent in an arbitrary or unreasonable manner unless the landlord has expressly contracted not to do so. The Appellate Division had previously reached the same conclusion in *Malcolm Post, Trustee* v. *Brookline Rent Control Bd.*, 1984 Mass. App. Div. 251 (1984). The judge also concluded that the board's authority was limited to fact finding, and that therefore the board exceeded its authority by ruling that the lease contained an implied condition that the landlord would not unreasonably withhold consent to assignment, sublease, or other person occupancy.

The board appealed, and the Appellate Division of the District Court affirmed the decision of the trial judge annulling the board's decision and ordering issuance of the certificate of eviction. The Appellate Division also concluded, as had the trial judge, that the board had exceeded its authority by making determinations of law, and awarded the landlord double costs and attorneys' fees.

The board filed a notice of appeal from the Appellate Division's decision and we granted the board's application for direct appellate review. We now affirm the Appellate Division's decision concerning the effect of the consent provision in the lease, but we do not agree that the board lacked authority to

deal with that question. Also, we reverse the Appellate Division's award of double costs and attorneys' fees.

The issue whether a tenant's obligation, as specified in a residential lease, to obtain the written consent of a landlord before assigning the lease or subletting or permitting other occupants implies as a matter of law an obligation on the landlord's part to act reasonably in withholding consent has not been decided by this court. Both parties point to *Healthco, Inc.* v. *E & S Realty Assocs.*, 400 Mass. 700 (1987), as impliedly supporting their position, but that case is not helpful, both because it involved a commercial, not a residential, lease and because, due to the tenant's failure to request the landlord's consent in that case, we did not reach the question whether the law implies a landlord's duty to act reasonably in withholding consent.

In this case, unlike the situation in *Healthco, Inc.* v. *E & S Realty Assocs.*, *supra*, we must resolve the question whether the landlord may unreasonably withhold consent because here the board found that the landlord's unreasonable and categorical refusal to consent to any replacement tenant whatsoever excused any failure on the part of the tenant to request the landlord's consent.

A majority of jurisdictions subscribe to the rule that a lease provision requiring the landlord's consent to an assignment or sublease permits the landlord to refuse arbitrarily or unreasonably. See, e.g., *Segre* v. *Ring*, 103 N.H. 278 (1961); *Isbey* v. *Crews*, 55 N.C. App. 47 (1981); *B & R Oil Co.* v. *Ray's Mobile Homes, Inc.*, 139 Vt. 122 (1980). However, the board argues that the current trend is the other way, and cites numerous cases in support of that proposition. We note that every case cited by the board except two, which we discuss below, involved a commercial, not a residential, lease. Although the significance of the distinction between commercial and residential leases may be fairly debatable, we observe that in several of the cases cited by the board the court specifically states that its holding is limited to the commercial lease context. See *Kendall* v. *Ernest Pestana, Inc.*, 40

Cal.3d 488 (1985); *Fernandez* v. *Vasquez*, 397 So. 2d 1171, 1174 n.8 (Fla. Dist. Ct. App. 1981).

*Kruger* v. *Page Management Co.*, 105 Misc. 2d 14 (N.Y. Sup. Ct. 1980), is the only purely residential lease case cited by the board. We get little help from that case because the reasonableness requirement in New York has been statutorily imposed. The other noncommercial lease case cited by the board is *Sanders* v. *Tropicana*, 31 N.C. App. 276 (1976). In that case, the court held that consent by the board of directors of a cooperative corporation to the transfer of the plaintiff's stock subscription and proprietary lease could not be unreasonably withheld. The relevance of *Sanders* to this case, however, was subsequently limited by *Isbey* v. *Crews*, *supra*, in which the same court that decided *Sanders* refused to imply a reasonableness requirement in a commercial lease. The court distinguished *Sanders* by saying that "[t]he Court's imposition of a 'reasonableness' limitation on the Board's discretion may be attributed to the fact that *Sanders* involved the alienability of corporate stock as well as of a leasehold . . . ." *Isbey*, *supra* at 50. The fact that no State court has acted to create a reasonableness requirement in a case involving only a residential lease, while not determinative, at least counsels us to be cautious about taking such a step.

The board argues that we should be guided by the commercial lease cases because the reasons for implying a reasonableness requirement in a residential lease are at least as compelling as in a commercial lease. Our review of the commercial lease cases, however, and particularly of the rationale that appears to have motivated the courts in those cases to adopt a reasonableness requirement, does not persuade us that we should adopt such a rule in this case, which involves a residential lease in a municipality governed by a rent control law. [3]

---

[3] We make no suggestion about the rule we might adopt in other contexts.

Two major concerns emerge from the commercial lease cases. First, courts have exhibited concern that commercial landlords may exercise their power to withhold consent for unfair financial gain. In several of the cases cited by the board, a commercial landlord refused to consent to a proposed subtenant and then attempted to enter into a new or revised lease for the same premises at a more favorable rental rate. See, e.g., *Kendall* v. *Ernest Pestana, Inc., supra* at 494; *Fernandez* v. *Vasquez, supra* at 1172, 1174; *Funk* v. *Funk,* 102 Idaho 521, 522, 524 (1981). However, in a rent control jurisdiction like Brookline there is little economic incentive to withhold consent in the residential lease context because the landlord has such limited control over the rent that can be charged. See St. 1970, c. 842 & c. 843.

The second concern that appears to have motivated the commercial lease decisions is a desire to limit restraints on alienation in light of the fact that "the necessity of reasonable alienation of commercial building space has become paramount in our ever-increasing urban society." *Homa-Goff Interiors, Inc.* v. *Cowden,* 350 So. 2d 1035, 1037 (Ala. 1977). However, this court has previously, albeit not recently, ruled that a commercial lease provision requiring a landlord's consent prior to an assignment, with no limitation on the landlord's ability to refuse, is not an unreasonable restraint on alienation. *68 Beacon St., Inc.* v. *Sohier,* 289 Mass. 354, 360-361 (1935). In light of our decision in *68 Beacon St., Inc.,* and in the absence of a demonstrable trend involving residential leases in other jurisdictions, we are not persuaded that there is such a "necessity of reasonable alienation of [residential] building space" that we ought to impose on residential landlords a reasonableness requirement to which they have not agreed. We are mindful that valid arguments in support of such a rule can be made, but there are also valid counter-arguments, not the least of which is that such a rule would be likely to engender a plethora of litigation about whether the landlord's withholding of consent was reasonable. The question is one of public policy which, of course, the Legislature is free to address. We note that the Legislature

has spoken in at least four States: Alaska Stat. § 34.03.060 (1988); Del. Code Ann. tit. 25, § 5512(b) (1975); Haw. Rev. Stat. § 516-63 (1985 & Supp. 1988); N.Y. Real Property Law § 226-b (McKinney 1989).

We turn now to the judge's ruling, affirmed by the Appellate Division, that the board lacked authority to address the legal question whether the lease provision requiring the landlord's consent before a valid assignment of the lease, or a sublease, or other person occupancy could rightfully occur implied a duty on the landlord not to withhold unreasonably such consent. We repeat the relevant part of § 9 (b) of Article XXXVIII of the Brookline rent control by-law first set forth at the outset of this opinion: "A landlord seeking to recover possession of a controlled rental unit shall apply to the Board for a certificate of eviction. . . . If the board finds that the facts attested to in the landlord's petition are valid and in compliance with paragraph (a), the certificate of eviction shall be issued." The question is whether § 9 (b) limits the board strictly to fact finding. We conclude that, at least with respect to interpretation of lease provisions and determining the obligations that flow therefrom, the board has authority to deal with questions of law. Of course, the board's determinations in that regard are subject to judicial de novo review.

We have never explicitly held that a rent control board's authority extends to the consideration of legal issues, but several of our decisions have implicitly assumed such authority. See, e.g., *Entis* v. *Rent Control Bd. of Brookline*, 399 Mass. 158, 160 (1987); *Kahn* v. *Brookline Rent Control Bd.*, 394 Mass. 709, 713 (1985); *Moulton* v. *Brookline Rent Control Bd.*, 385 Mass. 228, 232-233 (1982).

The special rent control act for Brookline provides that the "rent board shall have all powers necessary or convenient to perform its functions." St. 1970, c. 843, § 2. Under § 9 (b) of Article XXXVIII, in order to determine whether to issue a certificate of eviction the board must not only find facts but also must determine whether those facts are "in compliance with paragraph (a)" of § 9. In order to determine whether

the facts asserted by the landlord were "in compliance with" § 9 (a) (2), the board had to decide a mixed question of fact and law, namely whether the tenant had violated an obligation or covenant of his tenancy. The board was clearly required, and therefore authorized, to determine what obligations were imposed on the parties by the lease.

In ordering the board to pay double costs and attorneys' fees to the landlord, the Appellate Division relied on G. L. c. 231, § 108, and Dist. Mun. Cts. R. Civ. P. 64 (i) (1989), in addition to its "broad equity powers" reflected in G. L. c. 185C, § 3. Rule 64 (i) provides that "[i]f the appellate division shall decide that there has been no prejudicial error in the rulings complained of, it shall dismiss the report and may impose double costs in the action if it finds the objection to such rulings frivolous or intended for delay." General Laws c. 231, § 108, contains similar language. Neither the rule nor the statute (nor the Appellate Division's equity powers) gives the Appellate Division authority to award attorneys' fees.

The Appellate Division's authority to award double costs is conditioned upon its finding that the appeal was frivolous or intended for delay. In our view, the board's appeal cannot be characterized as either. The question whether, under the lease in this case, the landlord was obliged to give reasonable consent to assignment of the lease, subletting, or other person occupancy has not until today been decided by this court, and it is an important question. The other question on appeal to the Appellate Division was whether the board was authorized to consider the first question and as to that we have agreed with the board. Therefore, the appeal clearly was not frivolous. Clearly also, there is no reason to believe that the board had anything to gain by delay.

The decision of the Appellate Division annulling the board's decision and ordering issuance of the certificate of eviction is affirmed. The award of double costs and attorneys' fees is reversed.

*So ordered.*