31 Mass. App. Ct. 91                                    91

Clifford V. Miller, Inc. *v.* Rent Control Board of Cambridge.

CLIFFORD V. MILLER, INC. *vs.* RENT CONTROL BOARD OF CAMBRIDGE & others.[1]

No. 90-P-37.

Middlesex. March 12, 1991. - July 22, 1991.

Present: BROWN, KASS, & LAURENCE, JJ.

*Animal. Real Property*, Lease. *Landlord and Tenant*, Tenancy at will, Eviction.

Original matters of agreement between landlord and tenant, as parties to a written tenancy at will, carry forward, if not expressly altered, to a new tenancy at will created by an agreed upon rent adjustment. [93-94]

The Cambridge Rent Control Board acted beyond its statutory authority when it determined as matter of rent control law that a landlord arbitrarily denied its consent to a tenant's keeping of a dog, where the landlord had acted lawfully under the terms of the tenancy agreement. [94-95]

CIVIL ACTION commenced in the Cambridge Division of the District Court Department on March 14, 1989.

The case was heard by *Lawrence F. Feloney*, J.

*Peter M. Malaguti* for the plaintiff.

*Vali Buland* for Rent Control Board of Cambridge.

*Steven Zlochiver* for William White & another.

KASS, J. Rent control has as its objectives preventing, within limits of economic fairness, inflationary increases in rent and discouraging depletion of the rental housing stock in a community. See *Steinbergh* v. *Rent Control Bd. of Cambridge*, 406 Mass. 147, 149 (1989); *Valentine* v. *Rent Control Bd. of Cambridge*, 29 Mass. App. Ct. 60, 62 (1990). It is difficult to see how either purpose is served in this case, which has to do with whether the tenants may keep a dog.

---

[1]William White and Germaine Frechette.

The rent control board of Cambridge (the "board") denied to Clifford V. Miller, Inc. ("Landlord"),[2] a certificate of eviction directed against William White and Germaine Frechette (the "tenants"), who occupied unit 28 at 1654 Massachusetts Avenue as tenants at will.[3] Landlord's appeal is from a judgment of a District Court affirming the board's decision. A hearing officer for the board (he signed documents as an assistant counsel of the board) found facts which we summarize.

Before the tenants moved into the apartment in question, they signed a written agreement memorializing the terms of a tenancy at will. Paragraph 10 of that document, prepared on a printed form (1980 revision) published by the Rental Housing Association of the Greater Boston Real Estate Board, read as follows: "*PETS* — No dogs or other animals, birds, or pets shall be kept in or upon the premises without Landlord's written consent; and consent so given may be revoked at any time." When the tenants began to occupy the apartment in August, 1984, they brought with them no pet.

It was during November, 1985, that the tenants acquired a dog. They did not obtain written consent from Landlord. A man whom the hearing officer describes as a "premises manager" (one infers he was a building superintendent) permitted the tenants to keep the dog, and a successor premises manager interposed no objection. Between October, 1987, and March, 1988, Landlord, concerned about liability, cleanliness, safety, and the attitudes of other tenants about dogs, embarked on a campaign of expelling dogs from the apartment building. Landlord sent notices to quit to tenants who kept dogs. The record discloses that the Landlord may have been prepared to retain as tenants those who parted with

---

[2] Actually Clifford V. Miller, Inc., is not the owner of the property, but throughout acted as agent for Tucker R. Miller, J. Kurt Miller, and Nicholas U. Sommerfeld, trustees under the will of Clifford V. Miller. We refer to Clifford V. Miller, Inc., as the landlord for convenience of reference.

[3] See St. 1976, c. 36, § 9(*b*), which provides that, "A landlord seeking to recover possession of a controlled rental unit shall apply to the board for a certificate of eviction."

their dogs. The hearing officer found that it had been Landlord's intention to evict the tenants even if they no longer kept the dog. Not fair weather friends to their best friend, the tenants laudably opted to stick by their pooch and in their apartment.

One might suppose that Landlord's express reservation of right to revoke permission to canine tenure would govern the controversy. The board and the tenants, however, argue that this right of revocation is subject to a rule of reason and, in the event, the board has found Landlord to be acting quite unreasonably. That conclusion relies less on the dog's behavior (although the hearing officer's "recommendations" to the board permit the inference that it has been exemplary) than on the animal's physical makeup. The dog is handicapped. By reason of an accident when she was three days old, the dog has a partially paralyzed snout and is unable to open her jaws fully. In consequence the dog does not bark or bite or, as her mistress put it, "her biting is just minimal for eating." In relation to an animal so unthreatening, or so incapable of making good on any threat, the board has ruled as matter of rent control law, that withholding of consent to her continued residence is arbitrary, and so is the purported eviction of her owners.

1. *Effectiveness of the written tenancy at will agreement.* On three occasions between August 1, 1984, and November 15, 1986, Landlord increased the rent on apartment number 28. Each time, Landlord communicated the rent increase to the tenants by notifying them in writing that their tenancy at will was terminated and offering them, within the corners of the same one-page document, a new tenancy at will, "together with all rights and appurtenances thereto attached," at the increased rent. The board and the tenants argue that the termination of the original tenancy at will extinguished the written tenancy at will agreement signed by Landlord and the tenants at the very beginning.

A tenancy at will is a matter of agreement, *Williams* v. *Seder*, 306 Mass. 134, 136-137 (1940), and the original matters of agreement (e.g., repair obligations, right to inspect)

will carry forward when the tenancy at will is technically terminated and reconstituted — unless the parties manifest an intent to the contrary. *Strycharski v. Spillane*, 320 Mass. 382, 385 (1946). When, as here, a landlord and the tenants have taken the trouble to sign a writing which spells out their understanding about some of the more common subjects of the landlord and tenant relationship in a residential setting, it is not to be supposed that they must ritually repeat that act every time the rent is adjusted. The words of renewal, "together with all rights and appurtenances thereto attached," may be read as referring to what the parties had previously agreed. In the absence of evidence to the contrary, when the terms of a tenancy at will are set down in a writing signed by the parties, that writing will govern except for provisions expressly altered when, in order to adjust rent, the tenancy is terminated and simultaneously reconstituted.

2. *Landlord's right to revoke permission to keep a pet*. In their briefs, the parties dilate on whether the superintendents of the apartment building possessed apparent authority to waive the provision which required written consent from Landlord to keep a dog. It is not necessary to answer that question because Landlord revoked any consent arguably given on Landlord's behalf, and we are of opinion that revocation was lawful.[4] In *Slavin v. Rent Control Bd. of Brookline*, 406 Mass. 458, 461-464 (1990), the court held that a landlord need not, unless the lease so required, justify as reasonable a refusal to consent to the assignment of a residential lease by a tenant. There was little economic incentive, the court observed, for a landlord in a rent controlled setting to withhold such consent in order to force the termination of a

---

[4]Parenthetically, conduct of the principal, rather than unauthorized assertions of an employee or the subjective impressions of the third party, determines whether the employee has been cloaked with apparent authority. See *Kanavos v. Hancock Bank & Trust Co.*, 14 Mass. App. Ct. 326, 331-333 (1982); *Rubel v. Hayden, Harding & Buchanan*, 15 Mass. App. Ct. 252, 254-256 (1983). When a landlord makes a particular point that a certain permission shall be granted only in writing, potent evidence to the contrary is necessary to establish that an employee, not in any way involved with the leasing process, has the authority to waive the provision.

Clifford V. Miller, Inc. *v.* Rent Control Board of Cambridge.

tenancy in favor of a new tenant who would pay no more. *Id.* at 463. In the rent controlled setting, barring decontrol rules that are not part of the picture here, there would be no such tenant.

Another consideration underlying the *Slavin* decision was sombre contemplation of the volume of litigation that would be spawned by disputes about whether refusal to consent to an assignment had been reasonable. That prospect is more foreboding here. Attitudes about pet animals are understandably passionate. One person's companion is another's nuisance. It is not necessary to approve or even sympathize with Landlord's anti-dog position to acknowledge that an owner of a rental property may think it best for the property and for the preponderance of current and future tenants that there not be pet animals in the building.[5] Least of all does the issue have a rational connection with the board's business: rent levels and the volume of the housing stock. The case might stand otherwise if an expulsion order for a pet were shown to be a pretext to empty the rental unit so that it might be leased at an increased rent or removed from the roll of rental units. Nothing along those lines has been suggested.

The board acted beyond its statutory authority. A judgment shall be entered in the District Court directing the board to issue a certificate of eviction as applied for by Landlord.

*So ordered.*

---

[5]Massachusetts law is neutral and pragmatic about dogs. As matter of common law, they are regarded ordinarily as harmless animals. See *Andrews* v. *Jordan Marsh Co.*, 283 Mass. 158, 161 (1933). In context, they have been seen as "dangerous weapons." See *Commonwealth* v. *Tarrant*, 2 Mass. App. Ct. 483, 487 (1974), *S.C.*, 367 Mass. 411, 418 (1975).