Grabau, J.
The Town of Lynnfield (“Lynnfield”), as landlord, refused to consent to a sublease proposed by its tenant, John Hancock Life Insurance Company (“Hancock”). Hancock responded by terminating the lease, pursuant to a section of the lease that provided for such a response.
In this action, Lynnfield seeks (in Count I) a declaratory judgment that Hancock was not authorized to terminate the lease where it failed to satisfy an “implied or constructive condition” requiring that a proposed sublessee be “reasonably acceptable” to Lynnfield (Complaint at 7, ¶27). Lynnfield’s complaint also includes counts for “Specific Performance” (Count II), alleging that Hancock made structural changes to the premises that limit its marketability, and “Breach of Contract-Damages” (Count III).
After considering the arguments and submissions of both parties, the court ALLOWS the motion.
*359 BACKGROUND
Hancock was the lessee of premises owned by Lynnfield under a lease dated January 26, 1984. Section 10A of the lease required that Hancock obtain Lynnfield’s written consent before assigning any interest in the lease or subletting any part of the premises. Section IOC of the lease provided, in relevant part:
If Landlord refuses in writing to consent to the proposed single assignee or sublessee . . . , the Tenant, at its sole discretion may elect either of the following remedies:
1. To terminate the lease as of the end of the then quarterly rental period. Upon termination of the lease under this Paragraph 10.C.1, each and every obligation of the parties against each other... shall be considered satisfied or
2. To cause the Landlord to purchase Tenant’s interest in the Premises for a sum equal to one-half of its Depreciated value.
By letter dated September 19, 1994, Hancock notified Lynnfield of a proposed sublease of the premises to one Visone Motors, Inc., for which it requested Lynnfield’s consent.[1] By letter dated November 15, 1994, Lynnfield refused to consent to the proposed sublease.[2] By letter dated November 18, 1994, Hancock informed Lynnfield that it was invoking its right to terminate the lease as provided for in Section 10.C. 1 of the lease. By letter dated December 6, 1994, Lynnfield advised Hancock that the Town did not recognize Hancock’s termination, and, on January 20, 1995, Lynnfield filed the instant complaint.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the allegations of the complaint and draw any inferences from those allegations in the plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991) (and cases cited therein). The complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. Nader v. Citron, 372 Mass. 96, 98 (1977), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A complaint able to support relief under any theory of law is not subject to dismissal. Whitinsville Plaza v. Kotseas, 378 Mass. 85, 89 (1979).
In this case, Lynnfield, as lessor, refused to consent to a sublease proposed by Hancock, its tenant. One section (10.C.1) of the parties’ lease agreement provided that, in the event Lynnfield refused to consent to a proposed sublessee, Hancock, “at its sole discretion,” could elect to terminate the lease as of the end of the then current quarterly rental period. Pursuant to this section, Hancock elected to terminate the lease.
Lynnfield now argues that the lease must be read to contain “an implied or constructive condition” to Hancock’s right to terminate, whereby the proposed sublessee “be reasonably acceptable” to Lynnfield; and that, absent such a “reasonableness” requirement, the lease is effectively converted into an “option” for the tenant, whose obligations under the lease are rendered “illusoiy” (Plaintiffs Memorandum in Opposition at 8). Lynnfield also argues that “(t]he very fact that Hancock had negotiated for the Town’s approval” of the sublease to Visone as well as for an earlier proposed sublease to one Atlanticare “clear[ly] in-dicatfed]” that Hancock itself “recognised [sic] that it had an obligation to offer a new tenant reasonably acceptable to the landlord” (Plaintiffs Memorandum in Opposition at 16-17). For its part, Hancock argues that, if a commercial lease does not require a party to act reasonably in exercising a right under the lease, the law does not infer such a requirement.
In 21 Merchants Row Corp. v. Merchants Row, Inc., 412 Mass. 204 (1992), the plaintiff alleged that the defendant had wrongfully and unreasonably refused to consent to an assignment of a commercial lease. The defendant’s motion for a directed verdict on the grounds that it had a right, as a matter of law, to refuse consent for any reason, was denied by the trial court. The Supreme Judicial Court reversed, holding that a requirement in a commercial lease that the tenant obtain the landlord’s consent before assigning the lease does not imply, as a matter of law, that the landlord is obliged to act reasonably in withholding consent. 21 Merchants Row Corp. v. Merchants Row, Inc., 412 Mass. at 205-06. The Court, noting that it had reached the same conclusion with reference to residential leases in Slavin v. Rent Control Bd. of Brookline, 406 Mass. 458 (1990), saw “no sound reason to depart from this rule and [thereby] to grant greater protection in this regard to commercial tenants than that afforded to residential tenants.” 21 Merchants Row Corp. v. Merchants Row, Inc., 412 Mass. at 206.
In the instant case, Lynnfield acknowledges that there was no requirement in the lease that, as landlord, it act reasonably when withholding consent to a sublessee proposed by Hancock. Lynnfield argues, however, that, just because the Supreme Judicial Court, in 21 Merchants Row Corp., refused to infer a “reasonableness requirement” in the context of a landlord’s withholding consent to a sublease does not mean that the Court would not infer such a requirement in the context of a tenant’s proposing prospective sublessees where, as here, the lease in question allows the tenant to terminate the agreement in the event the sublessee proposed by the tenant is not accepted by the landlord. The difference, Lynnfield argues, is that, whereas a landlord’s refusal to accept a sublessee does not threaten the continuing vitality of the business relationship established by virtue of the lease, a tenant in Hancock’s position may, by proposing an unreasonable sublessee, singlehandedly trigger the termination of the lease. Therefore, Lynnfield argues, the court must avoid any construction of the lease that would *360 lead to such an “inequitable” result; i.e., the court must construe the lease to include an obligation on Hancock’s part to propose a sublessee that is reasonably acceptable to Lynnfield.
The “rule is clear in Massachusetts that every contract is subject to an implied covenant of good faith and fair dealing,” not excluding “contracts between sophisticated businesspeople.” Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 473 (1991) (citations omitted). In the instant case, Lynnfield has not alleged a lack of good faith or fair dealing on the part of Hancock. Nor has Lynnfield alleged duress, undue influence, misrepresentation, non-disclosure, mistake, unconscionability, or anything else that might render the lease contract void, voidable, or require its reformation. In short, there is nothing before the court to indicate that this commercial lease was anything other than the bargain entered into by the parties as ordinary business persons after engaging in negotiations at arm’s length.
The most that Lynnfield has alleged is that Hancock, in proposing a subtenant “not reasonably acceptable” to Lynnfield, “attempted to coerce” Lynnfield into “activat[ing] Hancock’s power to terminate the Lease" (Plaintiffs Memorandum in Opposition at 14). Nothing in the complaint, however, recites any facts to support this allegation; e.g., nowhere does Lynnfield allege that Hancock was aware of Visone’s prior misdealings with the Town, such that Hancock should have known Visone would not be accepted by the Town as a subtenant.
Accordingly, where, as a matter of law, the terms of the lease explicitly provided for Hancock’s termination of the lease in the circumstances that obtained here, the court finds that plaintiff has failed to state a claim upon which relief can be granted.[3]
ORDER
For the reasons discussed above, it is hereby ORDERED that the defendant’s motion to dismiss be ALLOWED.

This was not the first time Hancock had proposed new subtenants to Lynnfield. In 1993, Hancock proposed a sublease to one Atlanticare of Lynn (Complaint at 6, ¶22).

Lynnfield explained its refusal as follows:
Mr Anthony Visone, principal owner and officer of the proposed subtenant, Visone Motors, has demonstrated a cavalier disregard for both the Town’s zoning by-law and the requirements of the state building code. It appears that he constructed an illegal apartment in the basement of his home in Lynnfield without applying for any of the required permits. The Board felt it would be foolhardy to entrust the Town’s building to an organization owned and or controlled by an individual it has reason to fear would behave toward the town building in a similar manner.
(Lynnfield 11/15/94 letter at 1, ¶3.)

Moreover, here, where there is no ambiguity in the terms of the agreement, the court has no need to resort to the conduct of the parties to determine the meaning of the lease provisions. Therefore, whether Hancock ever “negotiated” with Lynnfield regarding the acceptability of proposed sub-lessees is irrelevant.