Neel, Stephen E., J.
Defendant Channel Technologies, Inc. (Channel) seeks an order enjoining plaintiff Sovereign Bank (Sovereign) from foreclosing on property under a mortgage from Channel securing a $5.2 million loan from Sovereign. After hearing, and review of the materials submitted, the Court concludes as follows.
Determination of likelihood of success on the merits turns primarily on whether Sovereign had a duty to act reasonably when, in the exercise its otherwise unconditional contractual right of consent thereto,[1] Sovereign declined to consent to the May 23,2008 sale of the assets of guarantor Harris Acoustic Products, Corp. (Harris). If Sovereign had no such duty, then under the note the sale was an event of default which, failing payment, triggered the right of foreclosure under the mortgage.[2]
Channel has cited no Massachusetts appellate decision holding that a commercial loan agreement or similar contract granting one party a right of consent in that party’s “sole discretion” nevertheless contains an implied covenant that such consent will be exercised reasonably. Rather, such contracts under Massachusetts law routinely contain additional language to the effect that consent “shall not be unreasonably withheld," if that is what the parties have negotiated. Cf. Worcester-Tatnuck Square CVS, Inc. v. Kaplan, 33 Mass.App.Ct. 499 (1992) (“The lease provided that CVS had the right to sublet all or part of the premises so long as Kaplan consented in writing. Kaplan, however, could not unreasonably withhold his consent. *270 Compare 21 Merchants Row Corp. v. Merchants Row, Inc., 412 Mass. 204 (1992)”).
Indeed, Sovereign relies on 21 Merchants Row Corp., wherein the commercial lease at issue provided that “ [notwithstanding any other provisions of this lease, Tenant covenants and agrees that it will not assign this lease or sublet... without in each instance having first received the express written consent of the Landlord.” The lease did not expressly limit the landlord’s discretion in consenting. Id. at 205. The court framed the issue, and decided it, as follows:
At issue ... is whether, in a commercial lease, the requirement that the tenant must obtain the landlord’s consent before assigning the lease implies, as a matter of law, an obligation on the landlord’s part to act reasonably in withholding consent. We conclude that a landlord is not so obligated.
In Slavin v. Rent Control Bd. of Brookline, 406 Mass. 458 (1990), we held that a reasonableness requirement would not be implied in the assignment clause of a residential lease. We noted there that “[a] majority of jurisdictions subscribe to the rule that a lease provision requiring the landlord’s consent to an assignment or sublease permits the landlord to refuse arbitrarily or unreasonably.” Id. at 461. Practitioners and authors have assumed this to be the rule in Massachusetts. See E.L. Schwartz, Lease Drafting in Massachusetts §9.3 n.1, at 413 (1961) (‘The lessor may, of course, arbitrarily refuse consent”) . . . We see no sound reason to depart from this rule and to grant greater protection in this regard to commercial tenants than that afforded to residential tenants, especially since we and other jurisdictions see no rational distinction between residential and commercial leases in this regard ...
Since the bargaining power of commercial tenants at the lease drafting stage is ordinarily greater than that of residential tenants, logic would indicate that, if we were to differentiate between residential and commercial leases, we would do so in favor of residential rather than commercial tenants. As we said in Slavin, “(t]he question is one of public policy, which, of course, the Legislature is free to address.” Slavin v. Rent Control Bd. of Brookline, supra, 406 Mass. at 463.
(Citations omitted.)
The Court sees no principled distinction between the commercial loan agreement at issue in this case, and the commercial lease in 21 Merchants Row Corp., with regard to analysis of a “sole discretion” provision. The commercial context is similar, the parties are sophisticated, and it was open to Channel and Harris either to seek a reasonableness requirement in the consent clause, or reject the deal with Sovereign.
Channel argues in the alternative that Sovereign’s demand that, in exchange for its consent, (1) 50% of the net proceeds of the sale be applied to the outstanding principal of the loan, (2) the loan’s maturity date be shortened, and (3) the interest rate on the loan be increased, presents the same kind of conduct which the Supreme Judicial Court found violated the covenant of good faith and fair dealing in Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451 (1991). In that case, the parties had contracted for HBC’s acquisition and development of Fan Pier. The court concluded that Anthony’s withheld its approval of plans necessary to permits required for the project
in an attempt to force HBC to sweeten the deal. Anthony’s use of a discretionary right under the agreements as a pretext justifies the judge’s ruling that Anthony’s breached the covenant of good faith and fair dealing. See Northern Heel Corp. v. Compo Indust., Inc., 851 F.2d 456, 471 (1st Cir. 1988) (applying Massachusetts law, court found violation of implied covenant of good faith and fair dealing in repudiation that was “but a tool engineered to serve th[e] illicit purpose” of extracting price concessions). See E.A. Farnsworth, Contracts §7.17(a), at 329 (1990) (It is, therefore, bad faith to use discretion ‘to recapture opportunities forgone on contracting’ as determined by the other parly’s reasonable expectations — to refuse “to pay the expected cost of performance,” quoting Burton, Breach of Contract and the Common Law Duly to Perform in Good Faith, 94 Harv.L.Rev. 369, 369, 372-73 [1980]).
Id. at 472-73.
In Anthony's, the permits which Anthony’s blocked were necessary to HBC’s performance under the contract, and the sole reason for Anthony’s withholding of approval was to “sweeten the deal,” i.e., obtain more money than it had bargained for. Here, Channel asked Sovereign to consent to the sale by Harris of substantial assets which formed part of the security for Sovereign’s loan — in other words, to give up part of that for which Sovereign had bargained. The conditions which Sovereign demanded for giving its consent, set out above, may be viewed as a commercially reasonable effort to preserve, in a different form, the security (i.e., Harris’s assets), for which Sovereign had successfully bargained, rather than an effort to “to recapture opportunities forgone on contracting.” Id. Accordingly, the Court concludes that Channel has failed to demonstrate a sufficient likelihood of success on its claim that Sovereign’s failure to consent to the Harris sale was pretextual.
Finally, the Court concludes that the balance of harms, in light of the likelihood of success on the merits, tips in Sovereign’s favor. The relative harms, as presented by Channel (Memorandum at 17-18, Reply at 5-6) involve primarily what Channel argues is its lost opportunity to obtain a higher price for the Walpole property, if it is allowed to sell that property, than can be expected at a foreclosure sale. That *271 anticipated harm is monetary, and rises to the status of irreparable harm only if the prospect of recovering lost sale proceeds from Sovereign is in doubt. Channel has not offered persuasive evidence of the latter.
ORDER
For the reasons stated above, defendant Channel’s emergency motion for preliminary injunction is DENIED.

 “Whenever the consent of Lender is required under this Guaranty... such consent may be granted or withheld in the sole discretion of Lender.” Harris Guaranty, at 3.

The Harris Guaranty provides, under “Guarantor’s Representations and Warranties,” that “(E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor’s assets . . .” The Promissory Note given by Channel defines “default,” inter alia as “Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor . . .” Sovereign evidently relies on the following “preceding event” as to Harris: “Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant, or condition contained in this Note or in any of the related documents . . .” Note, p. 1.The Business Loan Agreement contains the same language. Channel does not challenge Sovereign’s interpretation of default under the Note, Business Loan Agreement, and Guaranty.