EDWARD KENNETH ISBEY, JR. AND WILLIAM C. MORRIS, JR. v. H. DEN-
    NISTON CREWS, M.D. AND ARTUS M. MOSER, M.D. INDIVIDUALLY AND
    T/D/B/A ASHEVILLE KIDNEY CENTER

No. 8128DC300

(Filed 1 December 1981)

1. **Landlord and Tenant § 11.1— covenant against subletting without lessor's consent**

    An express covenant in a lease which allows the tenant to assign the lease
    or sublet the premises only if he receives the lessor's consent is valid and does
    not require that the lessor's withholding of consent be reasonable.

2. **Landlord and Tenant § 19— breach of lease agreement—abandonment of premises—damages**

    In an action to recover for breach of a lease of premises for use only as
    physician's offices and for a dialysis unit, the trial court properly entered sum-
    mary judgment for plaintiffs for the amount of rent due under terms of the
    lease where plaintiff's materials showed that defendant tenants abandoned the
    premises and failed to pay a particular amount of rent which was due, and
    defendants offered no evidence with respect to plaintiffs' failure to exercise
    reasonable diligence to mitigate their loss.

APPEAL by defendants from *Israel, Judge.* Summary judg-
ment for plaintiffs in the amount of $2,867.33 entered 16 March
1981 in District Court, BUNCOMBE County. Heard in the Court of
Appeals on 22 October 1981.

This is a civil action wherein plaintiffs, lessors, seek to
recover from the defendants, lessees, $2,867.33 because of the lat-
ter's alleged breach of a rental agreement.

Plaintiffs moved for summary judgment. The record discloses
the following uncontroverted facts:

Plaintiffs and defendants entered into a lease on 14
September 1976 by which the plaintiffs agreed to lease to defend-
ants certain premises located in Asheville. The lease was for a
renewable term of five years and was for a rental sum of
$172,040, "said rental due and payable in . . . equal monthly in-
stallments of . . . ($2867.33) . . . , payable in advance on the first
day possession of said premises is delivered to [defendants] and
on the same day of each month thereafter during the term of this
lease. . . ." The lease also contained the following relevant provi-
sions:

1. The leased premises shall be used and occupied by Lessee as and only for physicians' offices and for a dialysis unit and for no other purposes whatsoever without Lessor's written consent . . .

. . .

4. The Lessee shall not assign this lease or sublet the premises or any part thereof, or use the same or any part thereof, or permit the same, or any part thereof, to be used for any other purpose than as above stipulated, or make any alterations therein, or additions thereto, without the written consent of the Lessor. . .

From the time defendants moved into the building and including 15 August 1980, the defendants made all of the rental payments provided for in the lease. After operating a dialysis facility at the premises leased by plaintiffs, the defendants moved out on 22 May 1980 and acquired other premises. After the defendants vacated the premises, they sought plaintiffs' permission to sublet the property to a company which sells and distributes medical supplies. Plaintiffs refused to permit the defendants to sublet the premises. Plaintiffs thereupon brought this action to recover from defendants the sum of $2,867.33 (plus interest) which the defendants allegedly were required to pay under the lease as rent due on 17 September 1980. From summary judgment awarding plaintiffs $2,867.33 plus interest, defendants appealed.

*Morris, Golding, Blue & Phillips, by William C. Morris, Jr., and Sheila Fellerath, for plaintiff appellees.*

*Adams, Hendon, Carson & Crow, by George Ward Hendon, for defendant appellants.*

HEDRICK, Judge.

Defendants assign as error the court's entry of summary judgment. Summary judgment is properly entered if there is no genuine issue of material fact, *Branch Banking & Trust Co. v. Creasy*, 301 N.C. 44, 269 S.E. 2d 117 (1980), but a motion for summary judgment must be denied if there is such an issue of fact. *Dendy v. Watkins*, 288 N.C. 447, 219 S.E. 2d 214 (1975). An issue of fact is material, for the purpose of determining whether a motion for summary judgment should be denied, if the facts as al-

leged would constitute a legal defense or would affect the result of the action or would prevent the party against whom it is resolved from prevailing in the action. *City of Thomasville v. Lease-Afex, Inc.*, 300 N.C. 651, 268 S.E. 2d 190 (1980). In the present case, defendants argue that there were two issues of material fact which should have precluded summary judgment.

[1] Defendants first argue that there was an issue of material fact as to whether plaintiffs unreasonably refused to consent to the sublease proposed by defendants. Defendants contend this issue is material because an unreasonable refusal would constitute a material breach, by plaintiffs, of the lease agreement and would thereby entitle defendants to terminate the lease and their obligations to pay rent thereunder. Defendants would have us read into the lease agreement an obligation on the part of the lessor not to *unreasonably* withhold consent to a subtenant proposed by the lessee.

A tenant for an estate for years, however, may be *absolutely* barred from transferring his term by either assignment or sublease if there is an express covenant in the lease forbidding assignments and subletting. J. Webster, *Real Estate Law in North Carolina* § 70 (1971); *Rogers v. Hall*, 227 N.C. 363, 42 S.E. 2d 347 (1947). A fortiori, a tenant may be subjected to a lesser restraint than an absolute prohibition on alienation, to wit, an express covenant which allows the tenant to transfer his term if he receives the lessor's consent, but which bars the tenant from such a transfer if the lessor reasonably or unreasonably withholds his consent. The lease in the present case contains such an express restraint, forbidding the lessee from alienating the premises "without the written consent of the lessor;" nowhere did the lease state that such consent would not be unreasonably withheld. If it had, the lessor's withholding of consent could not be based on arbitrary considerations of personal taste, sensibility, or convenience, however honest the judgment. *Jones v. Andy Griffith Products, Inc.*, 35 N.C. App. 170, 241 S.E. 2d 140, *disc. rev. denied*, 295 N.C. 90, 244 S.E. 2d 258 (1978). The lessor plaintiffs in the present case, however, did not relinquish their rights to exert their own subjective criteria in deciding who could or could not be subtenants. A court does not insert terms into a contract when the parties elected to omit such terms, *Taylor v. Gibbs*, 268 N.C.

363, 150 S.E. 2d 506 (1966), and we will not here insert a requirement that the lessor not unreasonably withhold his consent.

The case of *Sanders v. Tropicana*, 31 N.C. App. 276, 229 S.E. 2d 304 (1976) is distinguishable. *Sanders* held that the Board of Directors of a cooperative apartment could not unreasonably withhold its consent under a contract which restrained a tenant-shareholder from transferring his lease and stock subscription without the Board's consent. The Court's imposition of a "reasonableness" limitation on the Board's discretion may be attributed to the fact that *Sanders* involved the alienability of *corporate stock* as well as a leasehold, the Court noting at 281, 229 S.E. 2d at 308 that "[r]estraints on alienation of coprorate stock in the form of consent requirements are generally disfavored." Restrictions on the alienability of corporate stock, however, are not at issue in the present case, and therefore *Sanders*, which centered more around such restrictions than on restraints on the alienability of leaseholds, is not apposite.

We hold, therefore, that the record discloses that the defendants breached their agreement with plaintiffs when they refused to make the rental payment which fell due on 17 September 1980, and plaintiffs are entitled as a matter of law to recover damages for such breach.

[2] Defendants argue there is a genuine issue of material fact as to the amount of damages plaintiffs are entitled to recover for any breach. This argument presents the question of how damages are to be computed when a tenant abandons the leased premises and fails to pay rent therefor, in breach of the lease, and the lease agreement contemplates, as here, that the premises will be occupied by a specific type of tenant and will be put exclusively to a specific kind of use. In computing breach of contract damages,

> the general rule is that a party who is injured by breach of contract is entitled to compensation for the injury sustained and is entitled to be placed, as near as this can be done in money, in the same position he would have occupied if the contract had been performed. Stated generally, the measure of damages for the breach of a contract is the amount which would have been received if the contract had been performed as made, which means the value of the contract, including the profits and advantages which are its direct results and fruits.

*Perkins v. Langdon,* 237 N.C. 159, 169-70, 74 S.E. 2d 634, 643 (1953). This formulation is especially relevant in the present case insofar as it takes account of the possibly peculiar value to plaintiffs of having the *defendants* perform their obligations under the lease agreement.

With respect to the question of mitigation of damages, the law in North Carolina is that the nonbreaching party to a lease contract has a duty to mitigate his damages upon breach of such contract. *Weinstein v. Griffin,* 241 N.C. 161, 84 S.E. 2d 549 (1954); *Monger v. Lutterloh,* 195 N.C. 274, 142 S.E. 12 (1928); J. Webster, *Real Estate Law in North Carolina* § 225 (1971). Hence, when the tenant abandons the leased premises and fails to pay rent, the landlord can recover only those damages which he could not with reasonable diligence avoid by reletting the premises. *See Monger v. Lutterloh, supra; J. Webster, supra.* If the landlord fails to use such reasonable diligence, his recovery as against the tenant will be limited to the difference between what he would have received had the lease agreement been performed, and the fair market value of what he could have received had he used reasonable diligence to mitigate. *See Monger v. Lotterloh, supra. See generally Perkins v. Langdon, supra.* If the landlord does mitigate by reletting, his recovery will consist of what he would have received had the lease been performed, less the net value of what he did receive from reletting during the relevant contract period. *See Monger v. Lutterloh, supra,* and *Eutaw Shopping Center, Inc. v. Glenn,* 39 N.C. App. 67, 249 S.E. 2d 459 (1978), *disc. rev. denied,* 296 N.C. 737, 254 S.E. 2d 177 (1979). These rules can take account of the peculiar advantages the lessor contracted for under the lease, and any quantifiable disadvantages which the lessor may suffer from having as his tenant someone other than the lessee with whom he contracted; hence, even if held to a duty to mitigate, the lessor may be made whole.

While the nonbreaching party is under duty to use reasonable diligence to minimize the loss occasioned by the injuring party's breach of contract, the burden is on the breaching party to prove that the nonbreaching party failed to exercise reasonable diligence to minimize the loss. *First National Pictures Distributing Corp. v. Seawell,* 205 N.C. 359, 171 S.E. 354 (1933). In the present case the plaintiffs supported their motion for summary judgment with evidentiary matter which disclosed that

there was no genuine issue with respect to the defendants' breach and to the amount of damages suffered by plaintiffs because of such breach. The defendants, on the other hand, offered in opposition to the motion for summary judgment no evidence with respect to plaintiffs' failure to exercise reasonable diligence to mitigate their loss. In the affidavit filed in opposition to the motion for summary judgment the defendants merely stated

> [t]he space in question has remained vacant since we moved out on May 22, 1980 and as far as I have been able to determine no one, particularly Dr. Isbey or Mr. Morris, has made any effort to rent the space since the termination of our lease on September 17, 1980.

This statement is nothing more than the conclusion of the affiant. The record is devoid of any evidence that the plaintiffs failed to exercise reasonable diligence to relet the premises after the defendants breached the contract. We hold the record discloses no genuine issue of material fact as to defendants' breach or as to the amount of loss suffered by plaintiffs as a result of such breach.

Affirmed.

Judges CLARK and MARTIN (Harry C.) concur.