## SYLVA SHOPS LTD. P'SHIP v. HIBBARD

[175 N.C. App. 423 (2006)]

SYLVA SHOPS LIMITED PARTNERSHIP, Plaintiff v. LOANNE G. HIBBARD, STANLEY L. HIBBARD, and LINDA GEDNEY, Defendants

No. COA04-1485

(Filed 17 January 2006)

**1. Landlord and Tenant— commercial lease—clause relieving landlord of duty to mitigate—enforceable**

A clause in a commercial lease that relieves the landlord from its duty to mitigate damages is not against public policy and is enforceable. Plaintiff was entitled to judgment on its breach of contract claim without any offset for a failure to mitigate.

**2. Landlord and Tenant— commercial lease—amount of rent and damages—affidavit with summary judgment motion—higher amount than complaint**

Plaintiff was entitled to a judgment of $35,511.70 in an action for rent on a commercial lease where the complaint specified $14,170.00 as the amount due, but plaintiff attached an affidavit to the motion for summary judgment alleging that damages totaled $35,511.70. Defendants did not demonstrate either that they preserved the question for review or that they were prejudiced, and there is no authority that prohibits entry of summary judgment on damages when there is no genuine issue of material fact as to those damages.

Appeal by plaintiff and cross-appeal by defendants from order entered 29 September 2003 by Judge James U. Downs and judgment entered 13 August 2004 by Judge Zoro J. Guice, Jr. in Jackson County Superior Court. Heard in the Court of Appeals 11 May 2005.

*Howard, Stallings, From & Hutson, P.A., by John N. Hutson, Jr., for plaintiff.*

*Ridenour, Lay & Earwood, PLLC, by Eric Ridenour, for defendants.*

GEER, Judge.

This appeal arises out of a suit for unpaid rent after defendants Loanne G. Hibbard, Stanley L. Hibbard, and Linda Gedney were forced to close their bagel shop in a shopping center of plaintiff Sylva Shops Limited Partnership. Both plaintiff and defendants have appealed from the jury verdict and judgment awarding plaintiff

$13,110.00. Defendants do not contest their liability for rent under their lease with plaintiff, but contend that plaintiff failed to mitigate its damages—a contention with which the jury agreed. Plaintiff, on the other hand, argues that the trial court erred in not enforcing a clause in the parties' lease specifying that plaintiff "shall have no obligations to mitigate Tenant's damages by reletting the Demised Premises." We hold that this clause, in a commercial lease, is not contrary to law or public policy and was, therefore, enforceable. Accordingly, we vacate the judgment below and remand for entry of judgment in the amount of $35,511.70, the amount properly determined by the trial court to be plaintiff's total damages prior to any set-off for a failure to mitigate.

## Facts

On 2 January 2002, defendants entered into a lease agreement for space at plaintiff's Sylva Shopping Center, a Wal-Mart shopping center located in Sylva, North Carolina. Defendants planned to open a bagel shop and, based upon the advice of a consultant, signed a five-year lease for an out-parcel space that had good visibility from the road. An out-parcel space is normally more expensive than other locations in the rest of the shopping center.

Defendants opened their business, The Bagel Bin and Sandwich Shop, in April 2002. Initially, the shop was quite successful, but when summer came and the local college students left, there was a sharp decline in sales. Defendants were forced to close the shop on 30 September 2002 with four and a half years remaining on their lease with plaintiff.

Shortly after the bagel shop closed, plaintiff began to look for a new tenant using a leasing agent, Ann Smith. Smith testified that she placed a "For Lease" sign in the window of the space, sent mailings to national tenants, and called other local businesses about leasing the space. Smith ultimately negotiated with a Mexican restaurant, but the restaurant never signed a lease for the space. Eventually, the space was rented to a sandwich restaurant. Defendants contended below that plaintiff's difficulties in re-leasing the space were the result of plaintiff's unwillingness to agree to a lower rent.

On 16 January 2003, plaintiff filed a complaint against defendants for unpaid rent, late fees, common area maintenance fees, insurance, and taxes in the amount of $14,170.00, together with interest and

attorneys' fees. Defendants filed an answer on 27 March 2003, denying that they were in breach of contract or that they owed the amount sought by plaintiff.

Plaintiff subsequently served a motion for summary judgment on 27 August 2003, attaching an affidavit indicating that plaintiff's damages totaled $35,511.70.[1] Following a hearing on 15 September 2003, Judge James U. Downs entered partial summary judgment in favor of plaintiff on 29 September 2003. The court found that defendants admitted the execution and validity of the lease, that defendants had "not disputed the Plaintiff's calculation of the amounts due from the Defendants under the Lease in either an affidavit or in oral argument," and that plaintiff had "presented affidavits and arguments which raise an issue of fact as to whether the Plaintiff has acted properly to mitigate its damages." The court then concluded that defendants were indebted to plaintiff in the amount of $35,511.70 as of 15 September 2003, but that defendants were "entitled to claim at trial that they are entitled to an offset from the above amount based on their claim that the Plaintiff failed to act reasonably in mitigating its damages."

The case proceeded to trial on 2 August 2004, with Judge Zoro J. Guice, Jr. presiding. Following the close of the evidence, plaintiff moved for a directed verdict, arguing that (1) because there was a clause in the lease that relieved plaintiff from the duty to mitigate damages, plaintiff was entitled to judgment as a matter of law; and (2) even if the court considered the mitigation issue, defendants had offered insufficient evidence that plaintiff failed to mitigate its damages. The court denied plaintiff's motion, and the jury ultimately determined that plaintiff had failed to use ordinary care to mitigate the consequences of defendants' breach of contract and that plaintiff could reasonably have avoided $22,401.70 in damages had it properly mitigated its damages.

Plaintiff moved for judgment notwithstanding the verdict on the same grounds made in its directed verdict motion. After denying the motion, the court, on 13 August 2004, entered judgment against defendants in the sum of $13,110.00, consistent with the jury verdict. Plaintiff filed a notice of appeal on 8 September 2004, while defendants filed a notice of appeal on 15 September 2004.

---

1. The affidavit stated that the total rent, late fees, and interest equaled $44,515.40, but that plaintiff had received a payment of $9,003.70 from the bankruptcy court in connection with the bagel shop's Chapter 7 bankruptcy petition.

Plaintiff's Appeal

**[1]** Plaintiff contends that the trial court erred in not granting its motion for a directed verdict or later its motion for judgment notwithstanding the verdict because the lease entered into by the parties contained the following clause:

> In no event shall Landlord's termination of this Lease and/or Tenant's right to possession of the Premises abrogate Tenant's agreement to pay rent and additional charges due hereunder for the full term hereof. Following re-entry of the Demised Premises by Landlord, Tenant shall continue to pay all such rent and additional charges as same become due under the terms of this Lease, together with all other expenses incurred by Landlord in regaining possession until such time, if any, as Landlord relets same and the Demised Premises are occupied by such successor, *it being understood that Landlord shall have no obligations to mitigate Tenant's damages by reletting the Demised Premises.*

(Emphasis added.) Defendants argue, however, that this clause is unenforceable. The question for this Court is whether parties to a commercial lease may, in this State, validly contract away the landlord's duty to mitigate damages.

We first observe that because one superior court judge may not overrule another superior court judge, Judge Guice could not revisit Judge Downs' determination that defendants were "entitled to claim at trial that they are entitled to an offset from the above amount based on their claim that the Plaintiff failed to act reasonably in mitigating its damages." *See State v. Woolridge*, 357 N.C. 544, 549, 592 S.E.2d 191, 194 (2003) ("[I]t is well established in our jurisprudence that no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action." (internal quotation marks omitted)). Plaintiff has, however, properly appealed from the denial of its motions for a directed verdict and judgment notwithstanding the verdict since our Supreme Court has held that denial of a motion for summary judgment is not reviewable following a trial on the merits:

> The purpose of summary judgment is to bring litigation to an early decision on the merits without the delay and expense of a trial when no material facts are at issue. After there has been a

trial, this purpose cannot be served. Improper denial of a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the merits by the trier of the facts, either judge or jury.

*Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985) (internal citations omitted).

The right to enter into a binding contract, such as a lease, belongs to every person not under a legal disability. *Chambers v. Byers*, 214 N.C. 373, 377, 199 S.E. 398, 401 (1938). As a result, courts will rarely inquire into the soundness of the bargain itself: "Liberty to contract carries with it the right to exercise poor judgment as well as good judgment. It is the simple law of contracts that as a man consents to bind himself, so shall he be bound." *Troitino v. Goodman*, 225 N.C. 406, 414, 35 S.E.2d 277, 283 (1945) (internal citation and quotation marks omitted). As a result, when parties contract at arm's length, the provisions in the parties' contract are "the law of their case," and courts are without power to revise the contract. *Harold Suits v. Old Equity Life Ins. Co.*, 249 N.C. 383, 386, 106 S.E.2d 579, 582 (1959) (refusing to strike a provision in a disability insurance policy that precluded the totally-disabled plaintiff from receiving benefits even though other states had struck the clause). So long as the contract itself and the terms within that contract are not "contrary to public policy or prohibited by statute," parties are free to contract as they deem appropriate. *Hlasnick v. Federated Mut. Ins. Co.*, 353 N.C. 240, 242-43, 539 S.E.2d 274, 276 (2000).

Defendants first argue that a clause relieving a landlord of its duty to mitigate damages is contrary to the law of this State, citing *Isbey v. Crews*, 55 N.C. App. 47, 284 S.E.2d 534 (1981). In *Isbey*, this Court held: "With respect to the question of mitigation of damages, the law in North Carolina is that the nonbreaching party to a lease contract has a duty to mitigate his damages upon breach of such contract." *Id.* at 51, 284 S.E.2d at 537. The duty to mitigate requires that " 'an injured plaintiff, whether his case be tort or contract, must exercise reasonable care and diligence to avoid or lessen the consequences of the defendant's wrong.' " *United Labs., Inc. v. Kuykendall*, 102 N.C. App. 484, 489, 403 S.E.2d 104, 108 (1991) (quoting *Watson v. Storie*, 60 N.C. App. 736, 739, 300 S.E.2d 55, 58 (1983)), *aff'd on other grounds*, 335 N.C. 183, 437 S.E.2d 374 (1993).

Defendants assert that because this Court has held that a landlord has a duty to mitigate upon a tenant's default, a provision that

relieves the landlord of this duty is contrary to the law and not allowed. The existence of a common law duty of care does not, however, absolutely preclude parties from agreeing in a contract to relieve a party of that duty. As our Supreme Court has explained in discussing clauses exculpating parties from liability for their own negligence:

> While contracts exempting persons from liability for negligence are not favored by the law, and are strictly construed against those relying thereon, nevertheless, the majority rule, to which we adhere, is that, subject to certain limitations hereinafter discussed, a person may effectively bargain against liability for harm caused by his ordinary negligence in the performance of a legal duty arising out of a contractual relation.

*Hall v. Sinclair Refining Co.*, 242 N.C. 707, 709, 89 S.E.2d 396, 397 (1955) (internal citations omitted). This principle arises out of "the broad policy of the law which accords to contracting parties freedom to bind themselves as they see fit . . . ." *Id.*, 89 S.E.2d at 397-98.

This Court has since held that a contract exculpating persons from liability for negligence "will be enforced unless it violates a statute, is gained through inequality of bargaining power, or is contrary to a substantial public interest." *Fortson v. McClellan*, 131 N.C. App. 635, 636, 508 S.E.2d 549, 551 (1998). If a party may—subject to the specified limitations—contract to insulate itself from liability for a failure to exercise due care, we can perceive no basis for precluding a party from contracting to relieve itself from a duty of due care to minimize its damages.

Defendants have not argued that the clause was obtained through an inequality of bargaining power. The lease represents an arm's length commercial transaction with both parties using brokers or advisors to assist them in obtaining the best possible bargain. Defendants were not forced to lease this particular space. They picked the space in question because it was the best location and admitted that "[n]obody was holding a gun to [our] head" to sign the lease. *See Martin v. Sheffer*, 102 N.C. App. 802, 805, 403 S.E.2d 555, 557 (1991) (in upholding a contractual clause expanding a seller's damages beyond those in the Uniform Commercial Code, observing that the merchant buyer did "not argue that he lacked meaningful choice in negotiating the terms of the contract").

The question remains whether the mitigation clause violates the public policy of this State or is otherwise contrary to a substantial

public interest. "Public policy has been defined as the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 175 n.2, 381 S.E.2d 445, 447 n.2 (1989).

This lease involves a private contract between businesses relating to a bagel shop. The clause does not create a risk of injury to the public or the rights of third parties. As this Court explained in holding that an exculpatory clause did not violate public policy when it relieved one business from liability for negligence to another business:

> [S]uch an indemnity provision is not against public policy where, as in the case at bar, the contract is private and the interest of the public is not involved and where there is no gross inequality in bargaining power. No rights of third parties are involved in the instant case, and the plaintiff was under no obligation or compulsion to take advantage of the service which the defendant offered to its customers free of charge. By entering into the 'Service Agreement', the plaintiff clearly accepted the conditions defendant annexed to its offer.

*New River Crushed Stone, Inc. v. Austin Powder Co.*, 24 N.C. App. 285, 287, 210 S.E.2d 285, 287 (1974) (internal citations omitted).

Defendants argue that allowing such clauses "would cripple the small business and residential tenant." We emphasize that this opinion does not address the viability of such a clause in a residential lease, which presents an entirely different situation. With respect to the risk to the business community, we note that a number of states do not impose any duty to mitigate. *See* Christopher Vaeth, Annotation, *Landlord's Duty, on Tenant's Failure to Occupy, or Abandonment of, Premises, to Mitigate Damages by Accepting or Procuring Another Tenant*, 75 A.L.R.5th 1, 103-17 (2005).

In examining commercial real estate lease transactions in light of public policy considerations, we recognize that negotiations generally involve relatively equal bargaining power due to the availability of other space and the fact that neither party is compelled to make a deal. Each lessee has to determine whether the lease offered is acceptable in business terms. Through negotiations, the parties to a commercial lease often include specific provisions for almost every contingency that could arise from their agreement and exact from each other concessions in order to obtain the desired provisions.

Ultimately, if the rent is too high or the provisions unacceptable to the lessee, a prospective commercial tenant can always look for another location.

Other jurisdictions have relied upon these considerations in determining that provisions relieving a landlord of a duty to mitigate do not violate public policy and should be enforced based upon ordinary contract principles. *See, e.g., Weingarten/Arkansas, Inc. v. ABC Interstate Theatres, Inc.*, 306 Ark. 64, 67, 811 S.W.2d 295, 297 (1991) (holding that the parties to a lease agreement can provide that the landlord has no duty to mitigate damages upon the tenant's default); *Comar Babylon Co. v. Goldberg*, 116 A.D.2d 551, 552, 497 N.Y.S.2d 405, 405 (App. Div. 2d Dep't 1986) (in affirming amount of damages noting that the lease provided that the landlord was under no obligation to mitigate damages); *New Towne Ltd. P'ship v. Pier 1 Imports (U.S.) Inc.*, 113 Ohio App. 3d 104, 108, 680 N.E.2d 644, 647 (1996) (after noting the rule in Ohio that a commercial landlord has the duty to mitigate damages, holding that a provision in the lease which specifically annulled that duty was enforceable because such provision "does not violate any principle of law. . . . [and] does not injure the welfare of the public in any way"); *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex. 1997) ("We therefore recognize that a landlord has a duty to make reasonable efforts to mitigate damages when the tenant breaches the lease and abandons the property, *unless the commercial landlord and tenant contract otherwise.*" (emphasis added)), *superceded by statute as stated by Lunsford Consulting Group v. Crescent Real Estate Funding VIII*, 77 S.W.3d 473 (Tex. App. 2002).[2] Although not controlling, we find these decisions persuasive. Accordingly, we hold that a clause in a commercial lease that relieves the landlord from its duty to mitigate damages is not against public policy and is enforceable.

Defendants, however, also argue that public policy is violated by the combination of the mitigation clause and a second clause requiring the tenant to obtain the landlord's approval before assigning or subletting the lease. That second provision specifies:

Tenant shall not transfer, assign, mortgage or encumber this Lease or sublet or permit the Demised Premises to be used by others, without the prior written consent of Landlord. To obtain such approval, Tenant shall submit to Landlord a copy of the pro-

2. *But see Drutman Realty Co. v. Jindo Corp.*, 865 F. Supp. 1093, 1102 (S.D.N.Y. 1994) (holding, under New Jersey law, that parties to a commercial lease may not contract to relieve the landlord of its duty to mitigate).

posed Assignee's financial statement, a copy of the Purchase Agreement of Tenant's business and/or any other Agreement between Tenant and said Assignee and a check in the amount of five hundred dollars ($500) payable to Landlord to reimburse Landlord its cost and processing the Assignment. *Landlord may either approve or disapprove said Assignment as Landlord deems necessary in its sole discretion, including the financial capability of the proposed Assignee, the management capability of the proposed Assignee or the protection of Landlord's shopping center. . . . If this Lease is assigned or if the Demised Premises or any part thereof is sublet or occupied by anyone other than Tenant without the express written consent of Landlord, Landlord may collect rent from the assignee, subtenant, or occupant and apply the net amounts collected to all rent herein reserved,* but no assignment, subletting, occupancy or collection shall be deemed a waiver of the covenants contained herein or the acceptance of the assignee, subtenant or occupant as Tenant or a release of the performance of the covenants on Tenant's part herein contained. In the event Landlord's written consent is given to an assignment or subletting, Tenant and any guarantor shall remain liable to perform all covenants and conditions hereof and to guarantee such performance by the assignee or subtenants. . . .

(Emphasis added.) This Court has previously upheld such clauses even when they do not place any limitations on the landlord's ability to withhold consent to an assignment of the lease. *Isbey*, 55 N.C. App. at 49, 284 S.E.2d at 536.

The terms of this particular provision do not alter our reasoning above. The parties entered into this contract on equal footing, neither party was forced to enter into this contract, they bargained over the specific provisions of the lease, and because the clause—which does not affect the public interest—was included after a bargained-for negotiation, it must be enforced between the parties. Under these circumstances, the public policy of this State cannot relieve a party of the consequences of a commercial agreement that, in hindsight, proved not to be advantageous.

While some states have passed statutes that specifically require a landlord to mitigate damages, North Carolina's legislature has not chosen to do so. *See, e.g.,* 735 Ill. Comp. Stat. 5/9-213.1 (2005); Tex. Prop. Code Ann. § 91.006 (2004). Whether or not such a stat-

ute is good public policy is a matter for the North Carolina General Assembly.

Because the clause in the contract alleviating plaintiff's duty to mitigate is enforceable, plaintiff was entitled to judgment on its breach of contract claim without any offset for a failure to mitigate. Given our resolution of plaintiff's appeal, we need not address plaintiff's alternative argument that defendants failed to meet their burden of proof with respect to their mitigation defense.

### Defendants' Appeal

[2] In their appeal, defendants contend that the trial court erred in concluding, in the partial summary judgment order, that plaintiff's damages totaled $35,511.70. Defendants argue that because plaintiff failed to move to amend its complaint, it should have been limited to the $14,170.00 amount specified in the complaint.

Plaintiff was not required to amend its complaint, but rather should have sought leave to file a "supplemental pleading" as provided in Rule 15(d) of the Rules of Civil Procedure:

> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which may have happened since the date of the pleading sought to be supplemented, whether or not the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead thereto, it shall so order, specifying the time therefor.

Plaintiff, however, neither moved for leave to file a supplemental pleading nor to amend its complaint.

Even assuming, without deciding, that plaintiff was required to do so, the record does not indicate that defendants objected on this basis before entry of the partial summary judgment order. The only mention of this argument by defendants that appears in the record occurs after the jury entered its verdict. The order itself states: "The Defendant [sic] has not disputed the Plaintiff's calculation of the amounts due from the Defendants under the Lease in either an affidavit or in oral argument." Based on this finding, it appears that defendants have failed to preserve this issue for appellate review. *See* N.C.R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request,

**SYLVA SHOPS LTD. P'SHIP v. HIBBARD**

[175 N.C. App. 423 (2006)]

objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").

Further, defendants have not demonstrated that they were prejudiced by any error. They received plaintiff's affidavit stating the new amount sought in advance of the summary judgment hearing and, based on that affidavit, were on notice that plaintiff sought a larger sum than sought in the complaint. Defendants argue that had they known plaintiff would be allowed to supplement the amount sought, they would have defaulted so as to fix the amount of damages to the amount asserted in the complaint. Since any default would have occurred long before the trial court entered its partial summary judgment order, defendants' inability to default cannot be attributed to any error in connection with the partial summary judgment order. Moreover, entry of a default judgment would not necessarily have precluded plaintiff from seeking the additional sums that it was ultimately awarded since plaintiff could have sought a trial on damages. *See Potts v. Howser*, 274 N.C. 49, 61, 161 S.E.2d 737, 746 (1968). Because defendants have not demonstrated either that they preserved this question for review or that they were prejudiced by any error, we overrule this assignment of error.

Finally, defendants argue that damages should be decided by a jury and not resolved on a motion for summary judgment. Summary judgment is appropriate, however, when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). Defendants do not cite any authority—and we know of none—that prohibits entry of summary judgment on the issue of damages when there is no genuine issue of material fact as to those damages. Since defendants did not argue to the trial court and do not argue on appeal any basis for challenging plaintiff's calculation of its damages, we hold that the trial court properly entered summary judgment on that issue.

## Conclusion

Because plaintiff was entitled to judgment as a matter of law on defendants' claim that plaintiff failed to mitigate its damages, the judgment below must be vacated and this case remanded for entry of judgment in favor of plaintiff in the amount of $35,511.70.

STATE v. CAO

[175 N.C. App. 434 (2006)]

Vacated and remanded.

Judges HUNTER and HUDSON concur.