KOTIS PROPERTIES, INC., PLAINTIFF v. CASEY'S, INC., A NC CORPORATION; PHASES, L.L.C., A NC LIMITED LIABILITY COMPANY; ROBERT L. CASEY, JR.; LAUREN D. CASEY; ANDREW K. PARKER; CYNTHIA M. ESTES; AND DONNA McNEAL, DEFENDANTS

No. COA06-680

(Filed 5 June 2007)

**Landlord and Tenant— breach of commercial lease—duty to mitigate—lease provisions**

The trial court correctly granted summary judgment for plaintiff in an action over the breach of a commercial lease in which defendants claimed that there was an issue of fact as to whether plaintiff adequately mitigated damages. The lease waived the duty to mitigate when the landlord reentered without termination, the burden of proving the affirmative defense of failure to mitigate was on defendants, and they pointed to nothing in the record that would support a finding that the landlord had terminated the lease.

Appeal by defendants from orders entered 2 December 2005 by Judge W. Douglas Albright and 13 December 2005 by Judge Lindsay R. Davis in Guilford County Superior Court. Heard in the Court of Appeals 11 January 2007.

*Winfree & Winfree, by Charles Winfree, for plaintiff-appellee.*

*Pinto Coates Kyre & Brown, P.L.L.C., by Brady A. Yntema, for Phases, L.L.C., Cynthia M. Estes, and Donna McNeal, defendants-appellants.*

GEER, Judge.

Defendants Phases, L.L.C., Cynthia M. Estes, and Donna McNeal (collectively the "Phases defendants") appeal from orders granting summary judgment and attorneys' fees to their former landlord, plaintiff Kotis Properties, Inc., for breach of a commercial lease agreement. While the Phases defendants do not dispute that Phases breached its lease with Kotis, they argue that Kotis failed to mitigate its damages.

In *Sylva Shops Ltd. P'ship v. Hibbard*, 175 N.C. App. 423, 623 S.E.2d 785 (2006), we recognized the enforceability of commercial lease provisions that expressly exempt a landlord from mitigating its damages in the event of a tenant's breach. Because the record establishes that the parties' lease contains such a provision, and the Phases defendants failed to demonstrate that this provision was inapplicable to their circumstances, we hold that the trial court did not err in granting summary judgment to Kotis and awarding the landlord attorneys' fees in accordance with the terms of the lease.

## Facts

In April 2002, Kotis entered into a commercial lease agreement (the "Lease") with Casey's, Inc. for property owned by Kotis in Greensboro, North Carolina. Under the Lease, Casey's agreed to rent the property for a five-year term, beginning 1 May 2002, for $3,237.05 per month. The performance of the Lease was guaranteed by Robert L. Casey, Jr., Lauren D. Casey, and Andrew K. Parker.[1]

Although the Lease prohibited Casey's from assigning or subleasing the property to another party, Kotis consented in July 2003 to a proposed assignment of the Lease by Casey's to Phases, which intended to operate a restaurant on the property. Casey's and its guarantors "remain[ed] bound to perform all of the Tenant's obligations under the Lease . . . ." Under a separate agreement, entitled "Assignment of Tenant's Interest in Lease," Phases "assume[d] all rights and obligations of [Casey's] under the Lease and agree[d] to comply with all terms of the Lease, including any provision requiring that the Premises be used for a specific purpose." Defendants Cynthia M. Estes and Donna McNeal guaranteed performance of Phases' obligations as the new tenant. Both Casey's and Phases agreed to be held jointly and severally liable in the event of a breach of the Lease.

---

1. Casey's Inc. and its guarantors (collectively the "Casey's defendants") were included as defendants in this action, but on 28 November 2005, Kotis voluntarily dismissed with prejudice all claims against the Casey's defendants.

KOTIS PROPS., INC. v. CASEY'S, INC.

[183 N.C. App. 617 (2007)]

Phases defaulted on rent payments beginning in May 2004, with three years still remaining on the Lease. Casey's did not cover the lapsed payments. That same month, Phases began negotiating to sell its assets to a businessman, Anthony Quick. Phases and Mr. Quick entered into an agreement under which Mr. Quick not only purchased Phases' assets, but also agreed to assume Phases' lease obligations from June 2004 through the expiration of the Lease, provided that Kotis approved the lease assignment.

Although Mr. Quick, who intended to operate a restaurant and bar on the premises, met with Kotis representatives and believed Kotis was "fine" with his plan to take over the Lease, Kotis ultimately refused to consent to the lease assignment. On the same date, in early June 2004, Kotis also formally placed both tenants—Casey's and Phases—in default. Kotis began to market the property to prospective tenants sometime in June or July 2004. The space, however, remained vacant for over a year until a new restaurant moved in and began paying rent in August 2005. Unpaid rents totaling $56,534.84 and unpaid interest totaling $10,136.23 accrued during this period.

On 11 August 2004, Kotis filed suit against the Casey's defendants and the Phases defendants for breach of the Lease. Kotis sought the accrued unpaid rent together with interest and attorneys' fees. The Casey's defendants and Phases defendants answered and asserted claims against each other. On 17 November 2005, Kotis filed a motion for summary judgment. Prior to the hearing on its motion, Kotis voluntarily dismissed its claims against the Casey's defendants with prejudice.

On 2 December 2005, the trial court granted summary judgment in favor of Kotis and against the Phases defendants. The court entered judgment in the amount of $44,671.07, the total past due rent less $22,000.00 that Kotis had received from the Casey's defendants. On 13 December 2005, the trial court also awarded Kotis $6,700.66 in attorneys' fees pursuant to the terms of the Lease. The Phases defendants and the Casey's defendants filed voluntary dismissals without prejudice of their still pending claims against each other. Thereafter, the Phases defendants filed a timely appeal to this Court from the trial court's summary judgment and attorneys' fees orders.

## Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). The party moving for summary judgment has the burden of establishing the lack of any triable issues. *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). Once the moving party meets its burden, then the non-moving party must "produce a forecast of evidence demonstrating that [it] will be able to make out at least a prima facie case at trial." *Id.* In opposing a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." N.C.R. Civ. P. 56(e). This Court reviews de novo a trial court's decision to grant summary judgment. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004).

On appeal, the Phases defendants do not dispute their liability for breach of the Lease, but rather argue that the trial court erred in granting summary judgment on the issue of damages because a genuine issue of material fact exists with respect to whether Kotis adequately mitigated its damages. *See Isbey v. Crews*, 55 N.C. App. 47, 51, 284 S.E.2d 534, 537 (1981) ("With respect to the question of mitigation of damages, the law in North Carolina is that the nonbreaching party to a lease contract has a duty to mitigate his damages upon breach of such contract."). Specifically, the Phases defendants point to Kotis' rejection of Mr. Quick's offer as evidence of its failure to mitigate the damages that ensued when the property remained vacant for approximately another year.

Both Kotis and the Phases defendants acknowledge *Sylva Shops*, in which this Court held "that a clause in a commercial lease that relieves the landlord from its duty to mitigate damages is not against public policy and is enforceable." 175 N.C. App. at 430, 623 S.E.2d at 791. The Phases defendants claim that the Lease in this case contains no such clause and, as a result, Kotis was not relieved of its duty to mitigate. Kotis, however, contends that the Lease specifically waived the landlord's duty to mitigate damages upon a tenant's breach and, therefore, it is unnecessary to consider the Phases defendants' arguments as to whether Kotis properly mitigated its damages. Based upon our review of the Lease, we believe that the parties did agree to waive Kotis' duty to mitigate, but *only if* Kotis reentered the premises without termination of the Lease.

Under Section 21 of the Lease, addressing the tenant's default, the parties agreed to the following pertinent provisions:

If Tenant defaults, then without further notice or demand, Landlord also may:

(1) Termination. Declare the Lease terminated, in which event Tenant's right to possess the Premises ceases and this Lease terminates as if Lease expired on the date set by Landlord for such termination. If this Lease so terminates, Tenant remains liable to Landlord for Tenant's accrued, but unperformed obligations under this Lease, plus damages equal to the rent and other sums that would have been due for the balance of the Lease Term, *less the net proceeds, if any, of any reletting of the Premises by Landlord subsequent to the termination, after deducting all of Landlord's expenses in connection with the reletting, including the expenses in 2(ii) below.* Tenant shall·pay those damages monthly on the days on which the rent and other amounts were payable under this Lease.

However, in lieu of such damages, Landlord may require Tenant to pay the Worth at the Time of Award of:

(i) the unpaid rent that had been earned at the time of termination; plus

*(ii) the amount by which the unpaid rent that would have been earned after termination until the time of award exceeds the amount of the rent loss that Tenant proves could reasonably have been avoided; plus*

*(iii) the amount by which the unpaid rent for the balance of the term of this lease after the time of award exceeds the amount of the rent loss that Tenant proves could reasonably be avoided;* plus

(iv) any other amount necessary to compensate Landlord for all the detriment proximately caused by Tenant's default or that in the ordinary course of things would be likely to result from that default.

. . . .

(2) Reentry without termination.

(i) Reenter and take possession of the Premises or any part of the Premises; repossess the Premises as of Landlord's former

estate; expel Tenant and those claiming through or under Tenant from the Premises; and remove the effects of both or either, without being deemed guilty of any manner of trespass and without prejudice to any remedies for arrears of rent or preceding breach of covenants or conditions. If Landlord so elects to reenter or if Landlord takes possession of the Premises pursuant to legal proceedings or pursuant to any notice provided by law, Landlord may, from time to time, without terminating this Lease, relet the Premises or any part of the Premises, either alone or in conjunction with other parts of the building of which the Premises are a part, in Landlord's or Tenant's name but for the account of Tenant, for such term or terms (which may be greater or less than the period that would otherwise have constituted the balance of the term of this lease) and on such terms and conditions (which may include concessions of free rent, and the alteration and repair of the Premises) as Landlord, in its uncontrolled discretion, may determine. Landlord may collect and receive the rents for the Premises. *Landlord will not be responsible or liable for any failure to relet the Premises, or any part of the Premises, or for any failure to collect any rent due upon reletting.* No reentry or taking possession of the Premises by Landlord, including under a forcible entry and detainer statute or similar law, constiues [sic] Landlord's election to terminate this Lease without Landlord's notice to such effect to Tenant. No notice from Landlord constitutes Landlord's election to terminate this Lease unless the notice says so. However, after any reentry, Landlord may declare the Lease terminated.

. . . .

Each right and remedy in this lease will be cumulative and will be in addition to every other right or remedy in this lease or existing at law or in equity or by statute or otherwise, including suits for injunctive relief and specific performance. The exercise or beginning of the exercise by Landlord of any right or remedy will not preclude the simultaneous or later exercise by Landlord of any other rights or remedies.

(Emphases added.) In short, upon default, Kotis could choose to terminate the Lease or to reenter the property without termination. Each option sets forth different rights and remedies.

We agree with Kotis that the provision under the "Reentry without termination" subsection, providing that "Landlord will not be

responsible or liable for any failure to relet the Premises," may only be construed as a waiver of Kotis' duty to mitigate. *See Sylva Shops*, 175 N.C. App. at 426, 623 S.E.2d at 789 (clause relieving landlord of duty to mitigate stated "that Landlord shall have no obligations to mitigate Tenant's damages by reletting the Demised Premises").

Subsection 21(1) regarding "Termination" does not, however, include a similar waiver of the duty to mitigate. To the contrary, the provision specifies that Kotis may, following termination of the Lease, require that Phases pay an award that takes into account "(ii) the amount by which the unpaid rent that would have been earned after termination until the time of award exceeds the amount of the rent loss that Tenant *proves could reasonably have been avoided*; plus (iii) the amount by which the unpaid rent for the balance of the term of this lease after the time of award exceeds the amount of the rent loss that Tenant *proves could reasonably be avoided . . . .*" (Emphases added.) This provision expressly anticipates proof of a failure to mitigate. Even if Kotis elected not to require Phases to pay this award, the termination provision includes no other language that could be construed as a waiver of the duty to mitigate.

The absence of any such language is significant when juxtaposed with the express inclusion of a waiver in section 21(2). We must presume that inclusion of this waiver in one part of the Lease, but not in a corollary part, reflects the deliberate intent of the contracting parties. *See Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996) ("If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract."); *Renfro v. Meacham*, 50 N.C. App. 491, 496, 274 S.E.2d 377, 379 (1981) ("Where the language of a contract is clear and unambiguous, the court is obligated to interpret the contract as written . . . ."). We thus have a lease agreement that waives the duty to mitigate damages when, upon default, the landlord reenters the premises *without* termination, but does not waive this duty if the landlord formally terminates the Lease.

The Phases defendants bore the burden of proof on its affirmative defense that Kotis failed to mitigate its damages. *See Isbey*, 55 N.C. App. at 51, 284 S.E.2d at 538 ("the burden is on the breaching party to prove that the nonbreaching party failed to exercise reasonable diligence to minimize the loss"). Accordingly, the Phases defendants were required to present evidence that Kotis had terminated the Lease—rather than reentering—and, therefore, there was no waiver of the duty to mitigate. The Phases defendants did not meet their

burden. They have pointed to nothing in the record—and we have found nothing—that would support a finding that Kotis terminated the Lease.

The Lease specifically provides that "[n]o reentry or taking possession of the Premises by Landlord . . . constitutes Landlord's election to terminate this Lease without Landlord's notice to such effect to Tenant." Further, "[n]o notice from Landlord constitutes Landlord's election to terminate this Lease unless the notice says so." Since the record contains no notice specifying that it is a termination of the Lease and since Kotis' taking of possession of the premises does not, standing alone, amount to an election to terminate, we conclude that the Phases defendants have not provided any forecast of evidence showing that Kotis actually terminated the Lease as opposed to reentering under section 21(2) of the Lease.

Without a showing of termination, section 21(2) of the Lease applies. In accord with *Sylva Shops*, we must give effect to the clause in the Lease that exempts Kotis from mitigating its damages when it reenters the premises *without* termination. Consequently, we need not reach the issue whether the Phases defendants presented sufficient evidence to raise a genuine issue of material fact as to whether Kotis made reasonable efforts to mitigate its damages and hold that the trial court did not err in entering summary judgment in Kotis' favor. *See Sylva Shops*, 175 N.C. at 432, 623 S.E.2d at 792 ("Because the clause in the contract alleviating plaintiff's duty to mitigate is enforceable, plaintiff was entitled to judgment on its breach of contract claim without any offset for a failure to mitigate."); *Isbey*, 55 N.C. App. at 52, 284 S.E.2d at 538 (summary judgment in landlord's favor was appropriate where "defendants . . . offered in opposition to the motion for summary judgment no evidence with respect to plaintiffs' failure to exercise reasonable diligence to mitigate their loss").

We, therefore, affirm the trial court's summary judgment order. Since the Phases defendants concede that the only basis for challenging the subsequent order awarding attorneys' fees was their objection to the granting of summary judgment, we also affirm the award of attorneys' fees to Kotis.

Affirmed.

Judges CALABRIA and JACKSON concur.