MILES E. BROWN, Jr. and MICHELE BROWN, Plaintiffs,
v.
BRAD ROBBINS and TONYA ROBBINS, Defendants.
No. COA07-77
Court of Appeals of North Carolina.
Filed November 6, 2007
This case not for publication
Poyner and Spruill, LLP, by J. Nicholas Ellis, for plaintiff-appellants.
Carruthers & Bailey, P.A., by Joseph T. Carruthers, for defendant-appellees.
BRYANT, Judge.
Miles E. Brown, Jr. and his wife, Michele Brown (plaintiffs) appeal from an order entered 24 October 2006 granting summary judgment in favor of Brad Robbins and his wife, Tonya Robbins (defendants). For the reasons stated herein, we affirm the order of the trial court.
Miles Brown worked as a NASCAR official at Bowman Gray Stadium for about thirteen years prior to 2005. On 2 April 2005, Miles Brown signed a "2005 NASCAR Membership and License Application[1] Official" and was granted a 2005 Official's license based on his completed application. His license entitled him to work as an official at Bowman Gray Stadium and to receive $50.00 in compensation each night he officiated a race.
On 30 April 2005, Miles Brown went to Bowman Gray Stadium to work as an official. In order to gain admittance to the pit area (and as was customary), he executed two documents. The "race night release" which contained a "RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT." The key provisions of the race night release include:
THIS SECTION MUST BE CAREFULLY READ AND SIGNED BY THE APPLICANT IN CONSIDERATION OF BEING PERMITTED TO ENTER FOR ANY PURPOSE ANY RESTRICTED AREA (herein defined as including but not limited to the racing surface, pit areas, . . . .) [Undersigned] HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE . . . PARTICIPANTS, . . . VEHICLE OWNERS, DRIVERS . . . FROM ALL LIABILITY to the undersigned . . . on account of injury to the person . . . whether caused by the negligence or gross negligence of the `releasees', or otherwise while the undersigned is in or upon the restricted area, and/or officiating in, observing, working for or for any purposes participating in the event(s). [Undersigned] HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS THE `RELEASEES' . . . . [Undersigned] HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY DUE TO THE NEGLIGENCE OR GROSS NEGLIGENCE OF `RELEASEES' OR OTHERWISE while in or upon the restricted area and/or while . . . officiating, observing, or working for or for any purpose participating in the event(s). THE UNDERSIGNED expressly acknowledges and agrees that the activities of the EVENT(S) are very dangerous and involve the risk of serious injury . . . . [] THE UNDERSIGNED further expressly agrees that the foregoing release, waiver, and indemnity agreement is intended to be as broad and inclusive as is permitted by law of the . . . State in which the EVENT(S) is conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect. All rights and obligations of this license, if granted, are specific to the individual applicant executing this membership and license application. THE UNDERSIGNED HAS READ AND VOLUNTARILY SIGNS THE RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT and further agrees that no oral representations, statements or inducements apart from the foregoing written agreement have been made.
The second document plaintiff signed on 30 April 2005 was a "pit pass" titled "RELEASE OF LIABILITY" and included:
I, the undersigned, hereby release . . . participant(s) . . . and any others connected with the race event for which the Pit Permit has been issued from liability for any and all losses, claims or demands resulting from . . . injury to person . . . arising from the negligence, gross negligence or from any other cause(s) connected with the race event . . . . The undersigned is subject to the terms and conditions of this Release of Liability. . . . THE UNDERSIGNED HAS CAREFULLY READ AND UNDERSTANDS THIS RELEASE OF LIABILITY AND AGREES TO ITS TERMS AND CONDITIONS.
(Emphasis added). On 30 April 2005, plaintiff sustained a broken leg and other injuries when he walked across the pit road and was hit by defendants' race car, which was exiting the track onto the pit road to avoid a massive crash in the turn. On 13 April 2006, plaintiffs initiated this lawsuit by filing a complaint against defendants. The complaint alleged defendants were negligent and jointly and severally liable to plaintiffs for injuries sustained by Miles Brown in the 30 April 2005 accident at Bowman Gray Stadium. On 26 June 2006, in response to plaintiffs' complaint, defendants filed an answer, counterclaim and a motion for summary judgment. On 24 July 2006, the trial court considered defendants' motion for summary judgment. On 24 October 2006, an order was entered granting defendants' motion for summary judgment which "dismissed with prejudice" plaintiffs' civil action. Plaintiffs appeal.
On appeal plaintiffs argue the trial court erred in granting defendants' motion for summary judgment. Specifically, plaintiffs argue: (I) defendants were not parties to the releases, nor direct, nor intended third-party beneficiaries; (II) releases are against public policy; (III) the releases were obtained by unequal bargaining power; (IV) defendants waived any rights under the releases by purchasing liability insurance; (V) the releases are unenforceable as there was no consideration tendered; and (VI) issues of material fact concerning the enforceability of the releases exist.
Summary judgment is appropriate only when the materials before the court reveal that there is no genuine controversy concerning any factual issue material to the outcome of the action so that resolution of the action involves only questions of law. Kessing v. National Mortg. Corp., 278 N.C. 523, 180 S.E.2d 823 (1971). The moving party "has the burden of showing that there is no genuine issue as to any material fact." Holley v. Burroughs Wellcome Co., 318 N.C. 352, 355, 348 S.E.2d 772, 774 (1986) (citation omitted). When considering summary judgment motions, the record must be viewed in a light most favorable to the non-movant. Caldwell v. Deese, 288 N.C. 375, 218 S.E.2d 379 (1975).

I & II
Plaintiffs argue the releases signed by Miles Brown did not relieve defendants from liability where defendants were neither a direct nor intended third-party beneficiary. Further, plaintiffs argue such a release is void as a matter of public policy.
A release providing that plaintiff released "all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, etc." is "a valid general release which by its terms unambiguously releases defendant from the liability charged in plaintiff's complaint, constituting a bar to plaintiff's claim against defendant[.]" Sykes v. Keiltex Indus., 123 N.C. App. 482, 485, 473 S.E.2d 341, 344 (1996). "[A] comprehensively phrased `general release', in the absence of proof of contrary intent, is usually held to discharge all claims . . . between the parties." See Id. at 487, 473 S.E.2d at 344 (rejecting plaintiff's argument that defendants were not third-party beneficiaries).
In this case, the NASCAR Membership and License Application, the race night release, and the pit pass, each signed by Miles Brown, released vehicle owners, drivers and others connected with the race from claims of negligence by plaintiff. We hold these unambiguous general releases are a bar to plaintiffs' recovery. See Battle v. Clanton, 27 N.C. App. 616, 618, 220 S.E.2d 97, 99 (1975) (affirming summary judgment in favor of second driver after the plaintiff executed a settlement agreement with the first driver and later attempted to sue the second driver who had given no consideration for, and who was not specifically named in, the release which stated "all other persons, firms, or corporations who are or might be liable from all claims of any kind"). In the instant case, it is clear defendants were direct intended third-party beneficiaries of the releases.
As for plaintiffs' public policy argument, we note that the case of Bertotti v. Charlotte Motor Speedway, 893 F. Supp. 565 (W.D.N.C. 1995) stands for the proposition that "exculpatory contracts entered in connection with motor sports events do not violate public policy because such contracts do not involve public interests." Id. at 566. The public interest exception to the enforceability of exculpatory contracts is applicable only to heavily regulated activities. See Tatham v. Hoke, 469 F. Supp. 914, 918 (W.D.N.C. 1979), aff'd, 622 F.2d 587 (4th Cir. 1980) (holding that exculpatory contracts between physician and patient are unenforceable because medicine is "heavily regulated by state authorities who have demonstrated the public interest in the activity"); Alston v. Monk, 92 N.C. App. 59, 64, 373 S.E.2d 463, 466-67 (1988) (holding exculpatory agreement with a cosmetology school unenforceable because cosmetology is a licensed activity"extensively regulated" by the State), review denied, 324 N.C. 246, 378 S.E.2d 420 (1989) . Therefore, where as here we have pre-race releases applicable to activities that are not heavily regulated and therefore do not involve a public interest, such releases are enforceable. See Fortson v. McClellan, 131 N.C. App. 635, 637, 508 S.E.2d 549, 551 (1998) ("An activity falls within the public policy exception when the activity is extensively regulated to protect the public from danger[.]"). Moreover, federal caselaw strongly implies that "when a party has the opportunity to see and read a pre-race exculpatory contract, the agreement is enforceable in North Carolina." Bertotti, 893 F. Supp. at 567 (interpreting this Court's holding inJohnson v. Dunlap, 53 N.C. App. 312, 317, 280 S.E.2d 759, 763 (1981), cert. denied, 305 N.C. 153, 289 S.E.2d 380 (1982)). These assignments of error are overruled.

III
As to plaintiffs' contention that plaintiff and the Winston-Salem Speedway had unequal bargaining power when plaintiff signed the release, the record shows: Miles Brown intended to work as a racetrack official, he desired to be close to races and wanted to earn fifty dollars. In turn, Winston-Salem Speedway needed a track official to perform the races. We recognize the principle of freedom to contract "arises out of `the broad policy of the law which accords to contracting parties freedom to bind themselves as they see fit . . . .'" Sylva Shops, Ltd. P'ship v. Hibbard, 175 N.C. App. 423, 428, 623 S.E.2d 785, 789 (2006) (quoting Hall v. Sinclair Refining Co., 242 N.C. 707, 710, 89 S.E.2d 396, 397-98(1955)). In this case, both parties mutually accepted what the other was offering. See Hall, 242 N.C. at 710, 89 S.E.2d at 398 (dismissing plaintiff's allegations of unequal bargaining power, even though plaintiff clearly had to sign the documents "to obtain something of importance to him which for all practical purposes is not obtainable elsewhere"). This assignment of error is overruled.

IV
Plaintiffs' "assumption of risk" also bars their negligence claim and supports summary judgment in favor of defendants. The NASCAR form and the race night document specifically provide that Miles Brown assumed the risk of injury. Assumption of risk is based on contract. McWilliams v. Parham, 269 N.C. 162, 166, 152 S.E.2d 117, 120 (1967). Miles Brown executed two legal contracts in which he assumed the risk of injury which "extends to those risks which are normally incident to the occupation in which the plaintiff engages." Id. Based on his deposition testimony, Miles Brown was fully aware that racing was a dangerous sport, that the pit area was dangerous, that cars could be moving at any time, and that people in the pit area had to look out for themselves. The terms of the release clearly indicated plaintiff assumed the risk of injury. This assignment of error is overruled.

V
Plaintiffs contend the releases are not enforceable because defendants purchased liability insurance. Plaintiffs base their contention on the fact that Miles Brown executed a release with Winston-Salem Speedway and argue that because Speedway leased the use of Bowman Gray Stadium from the City of Winston-Salem (a governmental entity), the release is waived to the extent of the insurance coverage. However, the Johnson case (the only case cited in support of plaintiffs' argument) does not support plaintiffs' argument of sovereign immunity. Johnson v. Dunlap, 53 N.C. App. 312, 280 S.E.2d 759 (1981), cert. denied, 305 N.C. 153, 289 S.E.2d 380 (1982). The lease agreement between the Speedway and the City of Winston-Salem does not give defendants the right to assert sovereign immunity as a waiver to contractual obligations unless specifically provided for in the contract. Defendants are private individuals and are not entitled to invoke the defense of sovereign immunity. See Knighten v. Barnhill Contr. Co., 122 N.C. App. 109, 112, 468 S.E.2d 564, 566 (1996) (dismissing the appeal on the grounds that there is "no authority in this State which recognizes a contractor's right to assert governmental immunity in a negligence claim which arises out of the performance of a contract with the State"). This assignment of error is overruled.

VI
Lastly, plaintiffs contend there was a genuine issue of material fact as to the enforceability of the release. We disagree. The record shows plaintiff signed two releases the night he was injured. Plaintiff testified he was agreeing to the terms and conditions of each when he signed them. Those two documents release defendants from liability resulting from car racing the night plaintiff was injured. In exchange for signing the releases, plaintiff was allowed to officiate in the pit area. The releases are valid, enforceable and are not against public policy. The releases are a bar to plaintiffs' claim of negligence. The trial court properly granted summary judgment.
Affirmed.
Judges STEELMAN and GEER concur.
Report per Rule 30(e).
NOTES
[1] This Membership and License Application contained release and indemnity language virtually identical to the language in the "racenight release" plaintiff executed on 30 April 2005.